# CITIZENS TO PRESERVE OVERTON PARK, INC., ET AL. *v.* VOLPE, SECRETARY OF TRANSPORTATION, ET AL.

No. 1066.  Argued January 11, 1971—Decided March 2, 1971

MARSHALL, J., wrote the opinion of the Court, in which BURGER, C. J., and HARLAN, STEWART, WHITE, and BLACKMUN, JJ., joined. BLACK, J., filed a separate opinion, in which BRENNAN, J., joined, *post*, p. 421. BLACKMUN, J., filed a separate statement, *post*, p. 422. DOUGLAS, J., took no part in the consideration or decision of this case.

*John W. Vardaman, Jr.,* argued the cause for petitioners. With him on the briefs was *Edward Bennett Williams.*

*Solicitor General Griswold* argued the cause for respondent Volpe. With him on the brief were *Assistant*

*Attorney General Gray, Alan S. Rosenthal,* and *Daniel Joseph. J. Alan Hanover* argued the cause for respondent Speight. With him on the brief were *David M. Pack,* Attorney General of Tennessee, *Lurton C. Goodpasture,* Assistant Attorney General, and *James B. Jalenak.*

Briefs of *amici curiae* were filed by *James M. Manire* and *Jack Petree* for the city of Memphis et al., and by *Roberts B. Owen* and *Gerald P. Norton* for the Committee of 100 on the Federal City, Inc., et al.

Opinion of the Court by MR. JUSTICE MARSHALL, announced by MR. JUSTICE STEWART.

The growing public concern about the quality of our natural environment has prompted Congress in recent years to enact legislation [1] designed to curb the accelerating destruction of our country's natural beauty. We are concerned in this case with § 4 (f) of the Department of Transportation Act of 1966, as amended,[2] and § 18 (a) of

---

[1] See, *e. g.,* The National Environmental Policy Act of 1969, 83 Stat. 852, 42 U. S. C. § 4321 *et seq.* (1964 ed., Supp. V); Environmental Education Act, 84 Stat. 1312, 20 U. S. C. § 1531 *et seq.* (1970 ed.); Air Quality Act of 1967, 81 Stat. 485, 42 U. S. C. § 1857 *et seq.* (1964 ed., Supp. V); Environmental Quality Improvement Act of 1970, 84 Stat. 114, 42 U. S. C. §§ 4371–4374 (1970 ed.).

[2] "It is hereby declared to be the national policy that special effort should be made to preserve the natural beauty of the countryside and public park and recreation lands, wildlife and waterfowl refuges, and historic sites. The Secretary of Transportation shall cooperate and consult with the Secretaries of the Interior, Housing and Urban Development, and Agriculture, and with the States in developing transportation plans and programs that include measures to maintain or enhance the natural beauty of the lands traversed. After August 23, 1968, the Secretary shall not approve any program or project which requires the use of any publicly owned land from a public park, recreation area, or wildlife and waterfowl refuge of national, State, or local significance as determined by the Federal, State, or

the Federal-Aid Highway Act of 1968, 82 Stat. 823, 23 U. S. C. § 138 (1964 ed., Supp. V) (hereafter § 138).[3] These statutes prohibit the Secretary of Transportation from authorizing the use of federal funds to finance the construction of highways through public parks if a "feasible and prudent"[4] alternative route exists. If no such route is available, the statutes allow him to approve construction through parks only if there has been "all possible planning to minimize harm"[5] to the park.

---

local officials having jurisdiction thereof, or any land from an historic site of national, State, or local significance as so determined by such officials unless (1) there is no feasible and prudent alternative to the use of such land, and (2) such program includes all possible planning to minimize harm to such park, recreational area, wildlife and waterfowl refuge, or historic site resulting from such use." 82 Stat. 824, 49 U. S. C. § 1653 (f) (1964 ed., Supp. V).

[3] "It is hereby declared to be the national policy that special effort should be made to preserve the natural beauty of the countryside and public park and recreation lands, wildlife and waterfowl refuges, and historic sites. The Secretary of Transportation shall cooperate and consult with the Secretaries of the Interior, Housing and Urban Development, and Agriculture, and with the States in developing transportation plans and programs that include measures to maintain or enhance the natural beauty of the lands traversed. After the effective date of the Federal-Aid Highway Act of 1968, the Secretary shall not approve any program or project which requires the use of any publicly owned land from a public park, recreation area, or wildlife and waterfowl refuge of national, State, or local significance as determined by the Federal, State, or local officials having jurisdiction thereof, or any land from an historic site of national, State, or local significance as so determined by such officials unless (1) there is no feasible and prudent alternative to the use of such land, and (2) such program includes all possible planning to minimize harm to such park, recreational area, wildlife and waterfowl refuge, or historic site resulting from such use." 23 U. S. C. § 138 (1964 ed., Supp. V).

[4] 49 U. S. C. § 1653 (f) (1964 ed., Supp. V); 23 U. S. C. § 138 (1964 ed., Supp. V).

[5] *Ibid.*

Petitioners, private citizens as well as local and national conservation organizations, contend that the Secretary has violated these statutes by authorizing the expenditure of federal funds [6] for the construction of a six-lane interstate highway through a public park in Memphis, Tennessee. Their claim was rejected by the District Court,[7] which granted the Secretary's motion for summary judgment, and the Court of Appeals for the Sixth Circuit affirmed.[8] After oral argument, this Court granted a stay that halted construction and, treating the application for the stay as a petition for certiorari, granted review.[9] 400 U. S. 939. We now reverse the judgment below and remand for further proceedings in the District Court.

Overton Park is a 342-acre city park located near the center of Memphis. The park contains a zoo, a nine-hole municipal golf course, an outdoor theater, nature trails, a bridle path, an art academy, picnic areas, and 170 acres of forest. The proposed highway, which is to be a six-lane, high-speed, expressway,[10] will sever the zoo from the rest of the park. Although the roadway will be depressed below ground level except where it crosses a small creek, 26 acres of the park will be destroyed. The highway is to be a segment of Interstate Highway I-40, part of the National System of Interstate and

[6] See 23 U. S. C. § 103.

[7] The case originated in the United States District Court for the District of Columbia. On application of the Secretary of Transportation it was transferred to the United States District Court for the Western District of Tennessee, which entered the summary judgment.

[8] 432 F. 2d 1307 (CA6 1970).

[9] This Court ordered the case to be heard on an expedited schedule.

[10] The proposed right-of-way will be 250 to 450 feet wide and will follow the route of a presently existing, nonaccess bus route, which carries occasional bus traffic along a 40- to 50-foot right-of-way.

Defense Highways.[11]  I–40 will provide Memphis with a major east-west expressway which will allow easier access to downtown Memphis from the residential areas on the eastern edge of the city.[12]

Although the route through the park was approved by the Bureau of Public Roads in 1956 [13] and by the Federal Highway Administrator in 1966, the enactment of § 4 (f) of the Department of Transportation Act prevented distribution of federal funds for the section of the highway designated to go through Overton Park until the Secretary of Transportation determined whether the requirements of § 4 (f) had been met.  Federal funding for the rest of the project was, however, available; and the state acquired a right-of-way on both sides of the park.[14]  In April 1968, the Secretary announced that he concurred in the judgment of local officials that I–40 should be built through the park.  And in September 1969 the State acquired the right-of-way inside Overton Park from the city.[15]  Final approval for the project—the route as well as the design— was not announced until November 1969, after Congress had reiterated in § 138 of the Federal-Aid Highway Act

[11] See 23 U. S. C. § 103 (d) (1964 ed., Supp. V).

[12] I–40 will also provide an express bypass for east-west traffic through Memphis.

[13] At that time the Bureau of Public Roads was a part of the Department of Commerce.  The Department of Transportation Act, 49 U. S. C. § 1651 *et seq.* (1964 ed., Supp. V), which became effective on April 1, 1967, transferred the Bureau to the new Department of Transportation.

[14] The Secretary approved these acquisitions in 1967 shortly after the effective date of § 4 (f).

[15] The State paid the City $2,000,000 for the 26-acre right-of-way and $206,000 to the Memphis Park Commission to replace park facilities that were to be destroyed by the highway.  The city of Memphis has used $1,000,000 of these funds to pay for a new 160-acre park and it is anticipated that additional parkland will be acquired with the remaining money.

that highway construction through public parks was to be restricted. Neither announcement approving the route and design of I–40 was accompanied by a statement of the Secretary's factual findings. He did not indicate why he believed there were no feasible and prudent alternative routes or why design changes could not be made to reduce the harm to the park.

Petitioners contend that the Secretary's action is invalid without such formal findings [16] and that the Secretary did not make an independent determination but merely relied on the judgment of the Memphis City Council.[17] They also contend that it would be "feasible and prudent" to route I–40 around Overton Park either to the north or to the south. And they argue that if these alternative routes are not "feasible and prudent," the present plan does not include "all possible" methods for reducing harm to the park. Petitioners claim that I–40 could be built under the park by using either of two possible tunneling methods,[18] and they claim that, at a

---

[16] Respondents argue that the only issue raised by petitioners' pleadings is the failure of the Secretary to make formal findings. But when petitioners' complaint is read in the revealing light of Conley v. Gibson, 355 U. S. 41 (1957), it is clear that petitioners have also challenged the merits of the Secretary's decision.

[17] Petitioners contend that former Federal Highway Administrator Bridwell's account of an April 3, 1968, meeting with the Memphis City Council given to the Senate Subcommittee on Roads of the Senate Committee on Public Works supports this charge. See Hearings on Urban Highway Planning, Location, and Design before the Subcommittee on Roads of the Senate Committee on Public Works, 90th Cong., 1st and 2d Sess., pt. 2, pp. 478–480 (1968).

[18] Petitioners argue that either a bored tunnel or a cut-and-cover tunnel, which is a fully depressed route covered after construction, could be built. Respondents contend that the construction of a tunnel by either method would greatly increase the cost of the project, would create safety hazards, and because of increases in air pollution would not reduce harm to the park.

minimum, by using advanced drainage techniques[19] the expressway could be depressed below ground level along the entire route through the park including the section that crosses the small creek.

Respondents argue that it was unnecessary for the Secretary to make formal findings, and that he did, in fact, exercise his own independent judgment which was supported by the facts. In the District Court, respondents introduced affidavits, prepared specifically for this litigation, which indicated that the Secretary had made the decision and that the decision was supportable. These affidavits were contradicted by affidavits introduced by petitioners, who also sought to take the deposition of a former Federal Highway Administrator[20] who had participated in the decision to route I–40 through Overton Park.

The District Court and the Court of Appeals found that formal findings by the Secretary were not necessary and refused to order the deposition of the former Federal Highway Administrator because those courts believed that probing of the mental processes of an administrative decisionmaker was prohibited. And, believing that the Secretary's authority was wide and reviewing courts' authority narrow in the approval of highway routes, the lower courts held that the affidavits contained no basis for a determination that the Secretary had exceeded his authority.

We agree that formal findings were not required. But we do not believe that in this case judicial review based solely on litigation affidavits was adequate.

---

[19] Petitioners contend that adequate drainage could be provided by using mechanical pumps or some form of inverted siphon. They claim that such devices are often used in expressway construction.

[20] Petitioners wanted to question former Highway Administrator Bridwell. See n. 17, *supra.*

A threshold question—whether petitioners are entitled to any judicial review—is easily answered. Section 701 of the Administrative Procedure Act, 5 U. S. C. § 701 (1964 ed., Supp. V), provides that the action of "each authority of the Government of the United States," which includes the Department of Transportation,[21] is subject to judicial review except where there is a statutory prohibition on review or where "agency action is committed to agency discretion by law." In this case, there is no indication that Congress sought to prohibit judicial review and there is most certainly no "showing of 'clear and convincing evidence' of a . . . legislative intent" to restrict access to judicial review. *Abbott Laboratories* v. *Gardner,* 387 U. S. 136, 141 (1967). *Brownell* v. *We Shung,* 352 U. S. 180, 185 (1956).[22]

Similarly, the Secretary's decision here does not fall within the exception for action "committed to agency discretion." This is a very narrow exception.[23] Berger, Administrative Arbitrariness and Judicial Review, 65 Col. L. Rev. 55 (1965). The legislative history of the Administrative Procedure Act indicates that it is applicable in those rare instances where "statutes are drawn in such broad terms that in a given case there is no law to apply." S. Rep. No. 752, 79th Cong., 1st Sess., 26 (1945).

---

[21] In addition, the Department of Transportation Act makes the Administrative Procedure Act applicable to proceedings of the Department of Transportation. 49 U. S. C. § 1655 (h) (1964 ed., Supp. V).

[22] See also *Rusk* v. *Cort,* 369 U. S. 367, 379–380 (1962).

[23] The scope of this exception has been the subject of extensive commentary. See, *e. g.,* Berger, Administrative Arbitrariness: A Synthesis, 78 Yale L. J. 965 (1969); Saferstein, Nonreviewability: A Functional Analysis of "Committed to Agency Discretion," 82 Harv. L. Rev. 367 (1968); Davis, Administrative Arbitrariness is Not Always Reviewable, 51 Minn. L. Rev. 643 (1967); Berger, Administrative Arbitrariness: A Sequel, 51 Minn. L. Rev. 601 (1967).

Section 4 (f) of the Department of Transportation Act and § 138 of the Federal-Aid Highway Act are clear and specific directives. Both the Department of Transportation Act and the Federal-Aid Highway Act provide that the Secretary "shall not approve any program or project" that requires the use of any public parkland "unless (1) there is no feasible and prudent alternative to the use of such land, and (2) such program includes all possible planning to minimize harm to such park . . . ." 23 U. S. C. § 138 (1964 ed., Supp. V); 49 U. S. C. § 1653 (f) (1964 ed., Supp. V). This language is a plain and explicit bar to the use of federal funds for construction of highways through parks—only the most unusual situations are exempted.

Despite the clarity of the statutory language, respondents argue that the Secretary has wide discretion. They recognize that the requirement that there be no "feasible" alternative route admits of little administrative discretion. For this exemption to apply the Secretary must find that as a matter of sound engineering it would not be feasible to build the highway along any other route.[24] Respondents argue, however, that the requirement that there be no other "prudent" route requires the Secretary to engage in a wide-ranging balancing of competing interests. They contend that the Secretary should weigh the detriment resulting from the destruction of parkland against the cost of other routes, safety considerations, and other factors, and determine on the basis of the importance that he attaches to these other factors whether, on balance, alternative feasible routes would be "prudent."

But no such wide-ranging endeavor was intended. It is obvious that in most cases considerations of cost, directness of route, and community disruption will indicate that parkland should be used for highway construction

---

[24] See 114 Cong. Rec. 19915 (statement by Rep. Holifield).

whenever possible. Although it may be necessary to transfer funds from one jurisdiction to another,[25] there will always be a smaller outlay required from the public purse [26] when parkland is used since the public already owns the land and there will be no need to pay for right-of-way. And since people do not live or work in parks, if a highway is built on parkland no one will have to leave his home or give up his business. Such factors are common to substantially all highway construction. Thus, if Congress intended these factors to be on an equal footing with preservation of parkland there would have been no need for the statutes.

Congress clearly did not intend that cost and disruption of the community were to be ignored [27] by the Secretary.[28] But the very existence of the statutes [29] indicates that protection of parkland was to be given para-

---

[25] See n. 15, *supra*.

[26] See 114 Cong. Rec. 24037 (statement by Sen. Yarborough).

[27] See, *e. g.*, S. Rep. No. 1340, 90th Cong., 2d Sess., 18–19; H. R. Rep. No. 1584, 90th Cong., 2d Sess., 12.

[28] The legislative history indicates that the Secretary is not to limit his consideration to information supplied by state and local officials but is to go beyond this information and reach his own independent decision. 114 Cong. Rec. 24036–24037.

[29] The legislative history of both § 4 (f) of the Department of Transportation Act, 49 U. S. C. § 1653 (f) (1964 ed., Supp. V), and § 138 of the Federal-Aid Highway Act, 23 U. S. C. § 138 (1964 ed., Supp. V), is ambiguous. The legislative committee reports tend to support respondents' view that the statutes are merely general directives to the Secretary requiring him to consider the importance of parkland as well as cost, community disruption, and other factors. See, *e. g.*, S. Rep. No. 1340, 90th Cong., 2d Sess., 19; H. R. Rep. No. 1584, 90th Cong., 2d Sess., 12. Statements by proponents of the statutes as well as the Senate committee report on § 4 (f) indicate, however, that the Secretary was to have limited authority. See, *e. g.*, 114 Cong. Rec. 24033–24037; S. Rep. No. 1659, 89th Cong., 2d Sess., 22. See also H. R. Conf. Rep. No. 2236, 89th Cong., 2d Sess., 25. Because of this ambiguity it is clear that we must look primarily to the statutes themselves to find the legislative intent.

mount importance. The few green havens that are public parks were not to be lost unless there were truly unusual factors present in a particular case or the cost or community disruption resulting from alternative routes reached extraordinary magnitudes. If the statutes are to have any meaning, the Secretary cannot approve the destruction of parkland unless he finds that alternative routes present unique problems.

Plainly, there is "law to apply" and thus the exemption for action "committed to agency discretion" is inapplicable. But the existence of judicial review is only the start: the standard for review must also be determined. For that we must look to § 706 of the Administrative Procedure Act, 5 U. S. C. § 706 (1964 ed., Supp. V), which provides that a "reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found" not to meet six separate standards.[30] In all cases

---

[30] "To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall—

"(1) compel agency action unlawfully withheld or unreasonably delayed; and

"(2) hold unlawful and set aside agency action, findings, and conclusions found to be—

"(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

"(B) contrary to constitutional right, power, privilege, or immunity;

"(C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

"(D) without observance of procedure required by law;

"(E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or

"(F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.

"In making the foregoing determinations, the court shall review the

agency action must be set aside if the action was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or if the action failed to meet statutory, procedural, or constitutional requirements. 5 U. S. C. §§ 706 (2)(A), (B), (C), (D) (1964 ed., Supp. V). In certain narrow, specifically limited situations, the agency action is to be set aside if the action was not supported by "substantial evidence." And in other equally narrow circumstances the reviewing court is to engage in a *de novo* review of the action and set it aside if it was "unwarranted by the facts." 5 U. S. C. §§ 706 (2)(E), (F) (1964 ed., Supp. V).

Petitioners argue that the Secretary's approval of the construction of I–40 through Overton Park is subject to one or the other of these latter two standards of limited applicability. First, they contend that the "substantial evidence" standard of § 706 (2)(E) must be applied. In the alternative, they claim that § 706 (2)(F) applies and that there must be a *de novo* review to determine if the Secretary's action was "unwarranted by the facts." Neither of these standards is, however, applicable.

Review under the substantial-evidence test is authorized only when the agency action is taken pursuant to a rulemaking provision of the Administrative Procedure Act itself, 5 U. S. C. § 553 (1964 ed., Supp. V), or when the agency action is based on a public adjudicatory hearing. See 5 U. S. C. §§ 556, 557 (1964 ed., Supp. V). The Secretary's decision to allow the expenditure of federal funds to build I–40 through Overton Park was plainly not an exercise of a rulemaking function. See 1 K. Davis, Administrative Law Treatise § 5.01 (1958). And the only hearing that is required by either the Administrative Procedure Act or the statutes regulating the dis-

whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error." 5 U. S. C. § 706 (1964 ed., Supp. V).

tribution of federal funds for highway construction is a public hearing conducted by local officials for the purpose of informing the community about the proposed project and eliciting community views on the design and route. 23 U. S. C. § 128 (1964 ed., Supp. V). The hearing is nonadjudicatory, quasi-legislative in nature. It is not designed to produce a record that is to be the basis of agency action—the basic requirement for substantial-evidence review. See H. R. Rep. No. 1980, 79th Cong., 2d Sess.

Petitioners' alternative argument also fails. *De novo* review of whether the Secretary's decision was "unwarranted by the facts" is authorized by § 706 (2)(F) in only two circumstances. First, such *de novo* review is authorized when the action is adjudicatory in nature and the agency factfinding procedures are inadequate. And, there may be independent judicial factfinding when issues that were not before the agency are raised in a proceeding to enforce nonadjudicatory agency action. H. R. Rep. No. 1980, 79th Cong., 2d Sess. Neither situation exists here.

Even though there is no *de novo* review in this case and the Secretary's approval of the route of I–40 does not have ultimately to meet the substantial-evidence test, the generally applicable standards of § 706 require the reviewing court to engage in a substantial inquiry. Certainly, the Secretary's decision is entitled to a presumption of regularity. See, *e. g., Pacific States Box & Basket Co.* v. *White,* 296 U. S. 176, 185 (1935); *United States* v. *Chemical Foundation,* 272 U. S. 1, 14–15 (1926). But that presumption is not to shield his action from a thorough, probing, in-depth review.

The court is first required to decide whether the Secretary acted within the scope of his authority. *Schilling* v. *Rogers,* 363 U. S. 666, 676–677 (1960). This determination naturally begins with a delineation of the scope of

the Secretary's authority and discretion. L. Jaffe, Judicial Control of Administrative Action 359 (1965). As has been shown, Congress has specified only a small range of choices that the Secretary can make. Also involved in this initial inquiry is a determination of whether on the facts the Secretary's decision can reasonably be said to be within that range. The reviewing court must consider whether the Secretary properly construed his authority to approve the use of parkland as limited to situations where there are no feasible alternative routes or where feasible alternative routes involve uniquely difficult problems. And the reviewing court must be able to find that the Secretary could have reasonably believed that in this case there are no feasible alternatives or that alternatives do involve unique problems.

Scrutiny of the facts does not end, however, with the determination that the Secretary has acted within the scope of his statutory authority. Section 706 (2)(A) requires a finding that the actual choice made was not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U. S. C. § 706 (2)(A) (1964 ed., Supp. V). To make this finding the court must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment. Jaffe, *supra*, at 182. See *McBee* v. *Bomar,* 296 F. 2d 235, 237 (CA6 1961); *In re Josephson,* 218 F. 2d 174, 182 (CA1 1954); *Western Addition Community Organization* v. *Weaver,* 294 F. Supp. 433 (ND Cal. 1968). See also *Wong Wing Hang* v. *Immigration and Naturalization Serv.,* 360 F. 2d 715, 719 (CA2 1966). Although this inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one. The court is not empowered to substitute its judgment for that of the agency.

The final inquiry is whether the Secretary's action followed the necessary procedural requirements. Here the only procedural error alleged is the failure of the Secretary to make formal findings and state his reason for allowing the highway to be built through the park.

Undoubtedly, review of the Secretary's action is hampered by his failure to make such findings, but the absence of formal findings does not necessarily require that the case be remanded to the Secretary. Neither the Department of Transportation Act nor the Federal-Aid Highway Act requires such formal findings. Moreover, the Administrative Procedure Act requirements that there be formal findings in certain rulemaking and adjudicatory proceedings do not apply to the Secretary's action here. See 5 U. S. C. §§ 553 (a)(2), 554 (a) (1964 ed., Supp. V). And, although formal findings may be required in some cases in the absence of statutory directives when the nature of the agency action is ambiguous, those situations are rare. See *City of Yonkers* v. *United States,* 320 U. S. 685 (1944); *American Trucking Assns.* v. *United States,* 344 U. S. 298, 320 (1953). Plainly, there is no ambiguity here; the Secretary has approved the construction of I–40 through Overton Park and has approved a specific design for the project.

Petitioners contend that although there may not be a statutory requirement that the Secretary make formal findings and even though this may not be a case for the reviewing court to impose a requirement that findings be made, Department of Transportation regulations require them. This argument is based on DOT Order 5610.1,[31] which requires the Secretary to make formal

---

[31] The regulation was promulgated pursuant to Executive Order 11514, dated March 5, 1970, 35 Fed. Reg. 4247, which instructed all federal agencies to initiate procedures needed to direct their policies and programs toward meeting national environmental goals.

findings when he approves the use of parkland for highway construction but which was issued after the route for I–40 was approved.[32] Petitioners argue that even though the order was not in effect at the time approval was given to the Overton Park project and even though the order was not intended to have retrospective effect the order represents the law at the time of this Court's decision and under *Thorpe* v. *Housing Authority,* 393 U. S. 268, 281–282 (1969), should be applied to this case.

The *Thorpe* litigation resulted from an attempt to evict a tenant from a federally funded housing project under circumstances that suggested that the eviction was prompted by the tenant's objections to the management of the project. Despite repeated requests, the Housing Authority would not give an explanation for its action. The tenant claimed that the eviction interfered with her exercise of First Amendment rights and that the failure to state the reasons for the eviction and to afford her a hearing denied her due process. After denial of relief in the state courts, this Court granted certiorari "to consider whether [the tenant] was denied due process by the Housing Authority's refusal to state the reasons for her eviction and to afford her a hearing at which she could contest the sufficiency of those reasons." 393 U. S., at 272.

While the case was pending in this Court, the Department of Housing and Urban Development issued regulations requiring Housing Authority officials to inform tenants of the reasons for an eviction and to give a tenant the opportunity to reply. The case was then remanded to the state courts to determine if the HUD regulations were applicable to that case. The state court held them not to be applicable and this Court reversed on the

---

[32] DOT Order 5610.1 was issued on October 7, 1970.

ground that the general rule is "that an appellate court must apply the law in effect at the time it renders its decision." 393 U. S., at 281.

While we do not question that DOT Order 5610.1 constitutes the law in effect at the time of our decision, we do not believe that *Thorpe* compels us to remand for the Secretary to make formal findings.[33] Here, unlike the situation in *Thorpe,* there has been a change in circumstances—additional right-of-way has been cleared and the 26-acre right-of-way inside Overton Park has been purchased by the State. Moreover, there is an administrative record that allows the full, prompt review of the Secretary's action that is sought without additional delay which would result from having a remand to the Secretary.

That administrative record is not, however, before us. The lower courts based their review on the litigation affidavits that were presented. These affidavits were merely *"post hoc"* rationalizations, *Burlington Truck Lines* v. *United States,* 371 U. S. 156, 168–169 (1962), which have traditionally been found to be an inadequate basis for review. *Burlington Truck Lines* v. *United States, supra; SEC* v. *Chenery Corp.,* 318 U. S. 80, 87 (1943). And they clearly do not constitute the "whole record" compiled by the agency: the basis for review required by § 706 of the Administrative Procedure Act. See n. 30, *supra.*

---

[33] Even if formal findings by the Secretary were mandatory, the proper course would be to remand the case to the District Court directing that court to order the Secretary to make formal findings. See R. Robertson & F. Kirkham, Jurisdiction of the Supreme Court of the United States § 446, p. 929 (R. Wolfson & P. Kurland ed. 1951). Of course, the District Court is not prohibited from remanding the case to the Secretary. See *infra,* at 420.

Thus it is necessary to remand this case to the District Court for plenary review of the Secretary's decision. That review is to be based on the full administrative record that was before the Secretary at the time he made his decision.[34]  But since the bare record may not disclose the factors that were considered or the Secretary's construction of the evidence it may be necessary for the District Court to require some explanation in order to determine if the Secretary acted within the scope of his authority and if the Secretary's action was justifiable under the applicable standard.

The court may require the administrative officials who participated in the decision to give testimony explaining their action.  Of course, such inquiry into the mental processes of administrative decisionmakers is usually to be avoided.  *United States* v. *Morgan,* 313 U. S. 409, 422 (1941).  And where there are administrative findings that were made at the same time as the decision, as was the case in *Morgan,* there must be a strong showing of bad faith or improper behavior before such inquiry may be made.  But here there are no such formal findings and it may be that the only way there can be effective judicial review is by examining the decisionmakers themselves.  See *Shaughnessy* v. *Accardi,* 349 U. S. 280 (1955).

The District Court is not, however, required to make such an inquiry.  It may be that the Secretary can prepare formal findings including the information required by DOT Order 5610.1 that will provide an adequate explanation for his action.  Such an explanation will, to some extent, be a *"post hoc* rationalization" and thus must be viewed critically.  If the District Court decides

---

[34] The Solicitor General now urges that in order to avoid additional delay the proper course is to remand the case to the District Court for review of the full administrative record.

that additional explanation is necessary, that court should consider which method will prove the most expeditious so that full review may be had as soon as possible.

*Reversed and remanded.*

MR. JUSTICE DOUGLAS took no part in the consideration or decision of this case.

Separate opinion of MR. JUSTICE BLACK, with whom MR. JUSTICE BRENNAN joins.

I agree with the Court that the judgment of the Court of Appeals is wrong and that its action should be reversed. I do not agree that the whole matter should be remanded to the District Court. I think the case should be sent back to the Secretary of Transportation. It is apparent from the Court's opinion today that the Secretary of Transportation completely failed to comply with the duty imposed upon him by Congress not to permit a federally financed public highway to run through a public park "unless (1) there is no feasible and prudent alternative to the use of such land, and (2) such program includes all possible planning to minimize harm to such park . . . ." 23 U. S. C. § 138 (1964 ed., Supp. V); 49 U. S. C. § 1653 (f) (1964 ed., Supp. V). That congressional command should not be taken lightly by the Secretary or by this Court. It represents a solemn determination of the highest law-making body of this Nation that the beauty and health-giving facilities of our parks are not to be taken away for public roads without hearings, factfindings, and policy determinations under the supervision of a Cabinet officer—the Secretary of Transportation. The Act of Congress in connection with other federal highway aid legislation,[1] it seems to me,

---

[1] See 23 U. S. C. § 128 (1964 ed., Supp. V) and regulations promulgated thereunder, 34 Fed. Reg. 727–730 (1969).

calls for hearings—hearings that a court can review, hearings that demonstrate more than mere arbitrary defiance by the Secretary. Whether the findings growing out of such hearings are labeled "formal" or "informal" appears to me to be no more than an exercise in semantics. Whatever the hearing requirements might be, the Department of Transportation failed to meet them in this case. I regret that I am compelled to conclude for myself that, except for some too-late formulations, apparently coming from the Solicitor General's office, this record contains not one word to indicate that the Secretary raised even a finger to comply with the command of Congress. It is our duty, I believe, to remand this whole matter back to the Secretary of Transportation for him to give this matter the hearing it deserves in full good-faith obedience to the Act of Congress. That Act was obviously passed to protect our public parks from forays by road builders except in the most extraordinary and imperative circumstances.[2] This record does not demonstrate the existence of such circumstances. I dissent from the Court's failure to send the case back to the Secretary, whose duty has not yet been performed.

Mr. Justice Blackmun.

I fully join the Court in its opinion and in its judgment. I merely wish to state the obvious: (1) The case comes to this Court as the end product of more than a decade of endeavor to solve the interstate highway problem at Memphis. (2) The administrative decisions under attack here are not those of a single Secretary; some were made by the present Secretary's predecessor and, before him, by the Department of Commerce's Bureau of Public

---

[2] See also *Named Individual Members of the San Antonio Conservation Society* v. *Texas Highway Department,* 400 U. S. 968, 972 (1970) (dissents from the denial of certiorari).

Roads.    (3) The 1966 Act and the 1968 Act have cut across former methods and here have imposed new standards and conditions upon a situation that already was largely developed.

This undoubtedly is why the record is sketchy and less than one would expect if the project were one which had been instituted after the passage of the 1966 Act.