**Richard J. BROOKS, a citizen, et al., Plaintiffs-Appellants,**

v.

**William T. COLEMAN, Jr., as Secretary of the United States Department of Transportation, et al., Defendants-Appellees.**

No. 74–3200.

United States Court of Appeals, Ninth Circuit.

June 9, 1975.

J. Richard Aramburu, and Irving M. Clark, Jr., Seattle, Wash. (argued), for plaintiffs-appellants.

George Hyde, Atty. (argued), Dept. of Justice, Washington, D. C., for defendants-appellees.

## OPINION

Before ELY and HUFSTEDLER, Circuit Judges, and TAYLOR,* District Judge.

PER CURIAM:

We are faced once again with an environmental challenge to highway construction altering the Snoqualmie Pass segment of I–90, located 45 miles east of Seattle in the Cascade Mountain Range. In our first encounter with this litigation, we held that the proposed addition of three lanes to the existing four-lane highway constituted a "use" of parklands within the meaning of 49 U.S.C. § 1653(f)[1] and that the National Environmental Policy Act, 42 U.S.C. § 4321 et seq., mandated the preparation of an environmental impact statement (EIS) before further work on the highway could be undertaken ((9 Cir. 1972) 460 F.2d 1193). Later, we upheld the district court's determination that the resulting impact statement was inadequate and entered an order enjoining further construction activity by the defendant ((9

Cir. 1973) 487 F.2d 1344). A new EIS was drafted, dated March 21, 1973, and circulated for public comment. Thereafter, the final EIS, incorporating the comments of appellant Brooks and others, and the 4(f) statement was properly moved through channels to the Secretary of Transportation who granted 4(f) approval on March 15, 1974. Final corridor and design approval was granted by FHWA on March 28, 1974. The state and federal appellees thereafter moved the district court for approval of their compliance with the prior order of the district court and sought dissolution of the injunction. The district court granted the requested relief and the conservationist-appellants appeal.

Three issues are presented: (1) Was the German alternative advocated by appellants a "feasible and prudent" alternative to the adopted plan? (2) Did the district court err in finding that the revised final impact statement adequately complied with the requirements of NEPA? (3) Did the district court err in ruling adequate the section 4(f) determination made by the Secretary of Transportation? The first of these questions is integrally related to the other two.

█ The existence of an unexamined but viable alternative to the adopted plan would have a dual significance: it could render the environmental impact statement inadequate (see, e. g., Natural Resources Defense Council, Inc. v. Morton (1972) 148 U.S.App.D.C. 5, 458 F.2d 827), and it could provide a basis for overturning the Secretary of Transportation's decision that parkland could be

---

* Honorable Fred M. Taylor, Senior United States District Judge, District of Idaho, sitting by designation.

1. Section 4(f) of the Department of Transportation Act of 1966, codified as 49 U.S.C. § 1653(f) provides in part:

   Maintenance and enhancement of natural beauty of land traversed by transportation lines

   (f) . . . . the Secretary shall not approve any program or project which requires the use of any publicly owned land from a public park, recreation area, or wildlife and

waterfowl refuge of national, State, or local significance as determined by the Federal, State, or local officials having jurisdiction thereof, or any land from an historic site of national, State, or local significance as so determined by such officials unless (1) there is no feasible and prudent alternative to the use of such land, and (2) such program includes all possible planning to minimize harm to such park, recreational area, wildlife and waterfowl refuge, or historic site resulting from such use.

used for highway purposes under § 4(f) of the Department of Transportation Act (*see, e. g., Citizens to Preserve Overton Park v. Volpe* (1971) 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136). Appellants argue that the German viaduct arrangement, detailed in a report jointly prepared by the Washington State Highway Department and the engineering firm of Dyckerhoff & Widmann, presents such an alternative. Because this option was examined in depth only after the final EIS had been completed and the current plan approved by the Secretary of Transportation, and because the German method would allegedly provide a "prudent and feasible" alternative to the planned "use" of parkland, the appellants contend that the environmental procedures employed were inadequate as a matter of law.

Applying the standard of review that we adopted in *Lathan v. Brinegar* (9th Cir. 1974) 506 F.2d 677, 693, we conclude that appellants' contentions must be rejected because the latest EIS reasonably complied with the procedural requirements of NEPA. We require "full, fair, bona fide compliance with NEPA," but we are not permitted to " 'fly speck' environmental impact statements." (*Id.*)

We think the final EIS adequately described the viaduct alternatives. The EIS "need only set forth those alternatives 'sufficient to permit a reasoned choice'." (*Life of the Land v. Brinegar* (9th Cir. 1973) 485 F.2d 460, 472 *quoting Natural Resources Defense Council, Inc. v. Morton* (1972) 148 U.S.App.D.C. 5, 458 F.2d 827, 836.) When the alternatives are thus set forth, an EIS does not become vulnerable because it fails to consider in detail each and every conceivable variation of the alternatives stated. The district court concluded, and we agree, that the German viaduct design was simply a variant of the viaduct-type alternatives that were adequately described in the final EIS.

We also reject appellants' contention that the district court erred in concluding that the German plan failed to present a "feasible and prudent" alternative within the meaning of section 4(f). The determination was based on an application of the proper legal standard and was supported by factual findings which we cannot say were clearly erroneous. The trial court correctly applied the standard of review established in *Overton Park,* asking whether the Secretary acted within the scope of his authority and could have reasonably believed that there were no feasible alternatives, whether his decision was based on a consideration of the relevant facts and involved no clear error in judgment and whether the Secretary's action followed the necessary procedural requirements. (401 U.S. at 414–16, 91 S.Ct. 814.) When he has thus complied, we cannot substitute our judgment for the Secretary's.

In its consideration of the Secretary's determination, the trial court drew upon *Overton Park's* definition of "feasible and prudent alternative": parklands may be "used" for highway purposes only if "there are truly unique factors present in the case," if "feasible alternative routes involve uniquely difficult problems," or if "the cost or community disruption resulting from alternative routes [reach] extraordinary magnitudes." (*Id.*at 413, 416, 91 S.Ct. at 822.) As a basis for concluding that the Secretary could reasonably have believed that there were no feasible alternatives, the court identified several "truly unusual factors" and "unique problems" that would result from use of the German plan: the additional impact created by the viaduct alternative on the Asahel Curtis picnic area and nature trail (also a "parkland" protected under the Department of Transportation Act), the absence of examples of successful use of the German method in the United States, the intensified problems of icing and snow removal expected to result under the German plan, and the unusual safety problems that would be presented during the construction of the overhang-

ing viaduct structure. Although appellants dispute many of these points, we find no grounds to disturb the factual conclusions drawn by the trial court or its resulting evaluation of the Secretary's 4(f) determination.

Affirmed.