The BENTON FRANKLIN RIVER-FRONT TRAILWAY AND BRIDGE COMMITTEE, Plaintiff-Appellant,

v.

Drew LEWIS, Individually, and Elizabeth H. Dole, as Secretary of the United States Department of Transportation; * City of Pasco, Washington; and City of Kennewick, Washington, Defendants-Appellees.

No. 81–3617.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 4, 1982.

Decided March 15, 1983.

---

* Pursuant to Fed.R.App.P. 43(c)(1), we substitute the name Elizabeth H. Dole, successor to

the original appellee Drew Lewis, as the Secretary of Transportation.

Nancy C. Shanahan, San Francisco, Cal., for amicus curiae Nat'l Trust for Historic Preservation.

Robert M. Sweeney, Asst. U.S. Atty., Spokane, Wash., Robert B. Rutledge, Portland, Or., Greg Rubstello, Pasco, Wash., William L. Cameron, Kennewick, Wash., for defendants-appellees.

Before SNEED, ANDERSON, and REINHARDT, Circuit Judges.

J. BLAINE ANDERSON, Circuit Judge:

This appeal questions the decision to demolish the Pasco-Kennewick Truss Bridge constructed in 1922 across the Columbia River in the State of Washington. Appellant, The Benton Franklin Riverfront Trailway and Bridge Committee, argues the bridge cannot be demolished as the Secretary of Transportation has not complied with the Department of Transportation Act of 1966, Section 4(f), Pub.L. No. 89–670, 80 Stat. 931, 49 U.S.C. § 1653(f) (1968).

OVERVIEW.

The action proceeded to trial on a stipulation to consolidate the hearing on the Committee's motion for preliminary injunction with the trial on the merits. The district court, 529 F.Supp. 101, ruled the Secretary of Transportation's § 4(f) Determination was not arbitrary and capricious and dismissed the Committee's complaint. The Committee was granted a stay pending appeal to this court upon the posting of a bond.

The Secretary concluded in his Final § 4(f) Determination, "[T]here is no feasible and prudent alternative other than to remove the bridge, and . . . the proposed action includes all possible planning to minimize harm." Clerk's Record, Vol. I, Plaintiff's Complaint, Exhibit G, p. 4, March 10, 1981. This determination was made as a final step in the evaluation process to demolish the Old Truss Bridge, but because of the circumstances of this case, not when the primary planning took place.

Nancy Y. Bekavac, Munger, Tolles & Rickershauser, Los Angeles, Cal., for plaintiff-appellant.

## I. FACTS

In the early 1970's, the cities of Pasco and Kennewick concluded the Old Truss Bridge was inadequate and future traffic patterns projected even greater deficiencies. The bridge had a restrictive tonnage capacity. The cities sought to build a new bridge and gain financial assistance from federal sources through section 124(a) and (b) of the Federal-Aid Highway Act of 1978, Pub.L. No. 95–599, 92 Stat. 2689, 2702–05, 23 U.S.C. § 144(c) and (d).

This section of the Act provides funds for the construction of a new bridge if the old bridge was inventoried, found in an unsafe condition, and as a matter of priority ought to be dismantled. With this goal in mind, the cities prepared and circulated a draft environmental impact statement to comply with the National Environmental Policy Act of 1969, § 102(2), Pub.L. No. 91–190 (1970), 42 U.S.C. § 4332(2). In December 1973, the Final Environmental Impact Statement (FEIS) was filed, approving demolition of the Old Truss Bridge. Behind this approval was the conditional construction permit of the United States Coast Guard—an involved agency since the bridge was to span a navigable river. The Coast Guard approved the construction of the new bridge, provided the Old Truss Bridge was removed. The reason for removal was the bridge's nonuse would not justify its inherent obstruction to navigation as it had when servicing transportation. The other basis for removal was the cities' commitment not to accept the expense of maintaining the Old Truss Bridge, thereby allowing it to deteriorate and become a safety hazard.

The project proceeded and in 1978 the new bridge was completed. Not long thereafter, the Old Truss Bridge was closed to all uses and no funds for repair or maintenance have since been appropriated by either city.

In an effort to prevent the destruction of the Old Truss Bridge, the Committee questioned whether the bridge had historical significance. It was determined by the Keeper of the National Register in May 1979, the Old Pasco-Kennewick Truss Bridge was eligible for inclusion in the National Register. Properties determined eligible are "on an equal footing with property that is actually listed" in the National Register. *Stop H–3 Association v. Coleman,* 533 F.2d 434, 438 (9th Cir.), *cert. denied,* 429 U.S. 999, 97 S.Ct. 526, 50 L.Ed.2d 610 (1976).

Once the bridge was eligible for inclusion in the National Register, the involved agencies were required to comply with the National Historic Preservation Act of 1966, Pub.L. No. 89–665, §§ 101, *et seq.,* 80 Stat. 915, *as amended,* Pub.L. No. 96–515, 94 Stat. 2987, 16 U.S.C. §§ 470, *et seq.,* and the Department of Transportation Act of 1966, § 4(f), Pub.L. No. 89–670, 80 Stat. 931, 49 U.S.C. § 1653(f) (1968), since federal funds were to be used for its demolition. Section 470f of the Preservation Act requires any federal agency which proposes by one of its projects to affect any object included in the Register to afford the Advisory Council on Historic Preservation a reasonable opportunity to comment on the proposal. The comment process began pursuant to the Act, and in September 1980, a Memorandum of Agreement was executed between the Federal Highway Administration, the Advisory Council on Historic Preservation, and the Washington State Historic Preservation Officer regarding the Old Truss Bridge.

The Memorandum of Agreement provided in the event the Secretary of Transportation determines in his § 4(f) Determination there are no feasible and prudent alternatives to the destruction of the Old Truss Bridge, it is in the public interest to demolish the bridge—with six provisos. Provisions 1, 2, and 3 discuss the actions of the Federal Highway Administration once the results of a ballot measure were received. The question before the voters of the two cities was whether to keep or remove the Old Truss Bridge. The Highway Administration could not give financial assistance until the vote was taken and, in the event the voters wanted the Old Truss Bridge maintained, the agency would not authorize any funds for removal. If, however, the voters wanted the bridge destroyed, the

Highway Administration "may assist in the demolition after documentation of the old bridge [was completed] ...." The agreement requires the Highway Administration to contact the National Architectural and Engineering Record (NAER) of the United States Department of the Interior's Heritage Conservation and Recreation Service. The level of documentation required would be established by the NAER and such documentation was to be accepted prior to the alteration or demolition of the Old Truss Bridge. The last three provisions relate to fulfilling the terms of the agreement and the procedures in the event the agreement is not implemented.

The question was placed before the voters in Pasco and Kennewick in September 1980, and the combined vote was 67% to destroy and 33% to remain. A draft § 4(f) evaluation was circulated in October 1980, and comments received. In March 1981, the Regional Director of the Federal Highway Administration executed the Final § 4(f) Determination concluding there were no feasible and prudent alternatives to the demolition of the Old Pasco-Kennewick Truss Bridge.

## II. DISCUSSION

### A. Standing

■ Federal appellees argue the Committee lacks standing to bring this action because they challenge the allegations in the Committee's complaint fail to put them within the "zone of interest" of § 4(f)'s protection. The district judge considered this argument in the light of existing authority and concluded the Committee had standing to bring the suit. We see no error in this determination.

The Committee's complaint asserts the demolition of the bridge will, "[A]dversely affect Plaintiff's interest and the interests of Plaintiff's members in the historic and aesthetic appreciation of the bridge." Clerk's Record, Vol. I, Complaint for Judicial Review of Administrative Action and for Injunctive and Declaratory Relief, p. 2. This is sufficient to meet the "injury in fact" prong. *Warth v. Seldin,* 422 U.S. 490,

499–500, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343, 354–5 (1972).

The leading case discussing § 4(f) of the Department of Transportation Act, 49 U.S.C. § 1653(f), is *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971). In that case, the Supreme Court allowed the citizens group to maintain an action questioning compliance with § 4(f). Environmental organizations and citizens action groups have consistently brought action for compliance with § 4(f) and the Committee here is not in a different position. *Adler v. Lewis,* 675 F.2d 1085 (9th Cir.1982); *Stop H–3 Association v. Coleman,* 533 F.2d 434 (9th Cir.,) *cert. denied,* 429 U.S. 999, 97 S.Ct. 526, 50 L.Ed.2d 610 (1976). We conclude the Committee is within the "zone of interest" and can maintain this action.

### B. Application of § 4(f)

■ City appellees next challenge the applicability of § 4(f) to the actions here at issue under the label "standing". The argument, substantially the same as raised below, is since the proposed action calls for the demolition of a structure, § 4(f)'s prohibition against the use of "land from an historic site" simply does not apply. The municipalities give a very narrow reading to the statute.

Section 4(f) prohibits the Secretary of Transportation from approving any program or project which requires the use of applicable land unless, "(1) there is no feasible and prudent alternative to the use of such land, and (2) such program includes all possible planning to minimize harm to such ... historic site resulting from such use." 49 U.S.C. § 1653(f). Regulations of the Federal Highway Administration declare no proposed Administration action will use land from any significant historic site unless a § 4(f) determination is made. 23 C.F.R. § 77.135(a)(1) (1982). This section further requires the evaluation under § 4(f) to be determined by the Administrator. Consideration under § 4(f) is not required, however, where the State Historic Preser-

vation Officer considers the site insignificant. 23 C.F.R. § 771.135(c). Here, the State Officer considered the Old Truss Bridge significant by declaring it eligible for inclusion in the National Register of Historic Places. The criteria used in evaluating National Register eligibility of properties affected by federal agency undertakings and for evaluating properties for nomination to the National Register are found in 36 C.F.R. § 60.6 (1982). The bridge was determined eligible under two of these criteria, (a) and (c). Clerk's Record, Vol. I, Plaintiff's Complaint, Appendix A, Determination of Eligibility Notification, May 23, 1979. Section 60.6 provides inclusion is appropriate when there is a quality of significance in

"American history, [or] architecture ... and [the object] ... possess[es] integrity of location, design, setting, materials, workmanship, feeling, and association, and

(a) ... are associated with events that have made a significant contribution to the broad patterns of our history; or

\* \* \* \* \* \*

(c) That embody the distinctive characteristics of a type, period, or method of construction, or that represent the work of a master, or that possess high artistic values, or that represent a significant and distinguishable entity whose components may lack individual distinction...."

36 C.F.R. § 60.6 (1982).

The Old Truss Bridge was considered significant both for its "distinctive characteristics of type, period, or method of construction" and its "associat[ion] with events that have made a significant contribution to the broad patterns of our history." It is clear the bridge was not thought of merely as a significant "structure," but also as an "historic site."

Appellees' reading of § 4(f) is entirely too restrictive and lacks logic. There would be no sense in allowing the destruction and removal of structures on land and then determining whether the "land" will be used by the proposed federal action. The

land will often lose its historical significance once the object is removed. Hence, we conclude the removal of the Old Truss Bridge from its current location across the Columbia River would be a use of "land from an historic site" and therefore § 4(f) of the Department of Transportation Act must be satisfied.

## C. § 4(f) Determination

■ In reviewing a section 4(f) Determination, we must consider "whether the Secretary acted within the scope of his authority, whether the decision was based on a consideration of the relevant facts and whether there has been a clear error in judgment," and finally "whether the Secretary's action followed the necessary procedural requirements." *Overton Park,* 401 U.S. at 416, 91 S.Ct. at 823, 28 L.Ed.2d at 153. The court must ascertain whether the agency took a hard look at all relevant factors and whether the alternatives set forth are sufficient to permit a reasoned choice. We conclude the Secretary acted arbitrarily because he failed to consider all relevant factors.

The national significance of historical sites and structures is not in dispute. Congress has established policies and enunciated preferences which state and local agencies may not defile by avoidance and delay. Here, by not acting in accordance with regulations, the agencies did not inventory the Old Truss Bridge as a potentially historically-protected site at a time when there were many alternatives.

Regulations promulgated by the Department of the Interior require the State Historic Preservation Officer to prepare a comprehensive statewide survey of historic properties. 36 C.F.R. § 61.2(a)(3) (1982). The objective of these surveys is to be

"... the *identification,* protection and preservation of all districts, sites, buildings, structures, and objects within the State that are potentially significant in American history, architecture, archeolo-

gy and culture at the national, State, and local levels." (emphasis supplied)

36 C.F.R. § 61.6(a).

This was not done by the time the FEIS was filed, nor in the preparation of the EIS was this criteria considered. This oversight by the State Historic Preservation Officer in the early 1970's is further magnified by the similar failure of the Federal Highway Administration to consider it when evaluating the construction of the new bridge. It is the responsibility of the federal agency,

> " . . . to identify or cause to be identified any National Register or eligible property that is located within the area of the undertaking's potential environmental impact and that may be affected by the undertaking."

36 C.F.R. § 800.4(a). The Administration also had an obligation under 23 C.F.R. § 771.135(b). That subsection provides,

> "Any use of lands from a section 4(f) property shall be evaluated early in the development of the action when alternatives to the proposed action are under study."

23 C.F.R. § 771.135(b). In addition, as part of § 144, the bridge could have been inventoried as historically significant. 23 U.S.C. § 144(c)(2).

In examining the § 4(f) Determination, we note there is no indication the Administrator considered the possibility of federal funding for the preservation or rehabilitation of the Old Truss Bridge. If this alternative was considered, it was done in such a conclusory fashion we are unable to examine whether there has "been a clear error of judgment." *Overton Park,* 401 U.S. at 416, 91 S.Ct. at 823, 28 L.Ed.2d at 153.

The Administrator states:
> "While it may be possible to turn the bridge over to others for maintenance and operation, it is not considered feasible or prudent in view of the results of the ballot issue."

Section 4(f) Determination, p. 2, Clerk's Record, Vol. I, Plaintiff's Complaint, Appendix G. The results of the ballot measure should not be the sole factor in the federal agency's evaluation. The Supreme Court recognized cost and community disruption as factors to be considered, but also acknowledged it was only in "truly unusual circumstances" the factors would suggest a particular result. Feasibility was viewed in terms of sound engineering. There is no reference in the § 4(f) Determination, nor the Final section 4(f) Evaluation (used by the Administrator in arriving at his conclusions) to feasibility in this framework.

In addition, the Administrator concludes:
> "Inasmuch as the FEIS for the new four-lane bridge called for the demolition of the old Pasco-Kennewick Bridge, the only available alternative is the 'do nothing' or 'no action.' "

*Id.,* 4(f) Determination, p. 3. Logic does not support this conclusion. If the FEIS mandated demolition, and this was a commitment, then there would indeed be no alternative. By acknowledging "do nothing" as an alternative, the Administrator suggests alternatives exist though he has arbitrarily selected "no action" as the exclusive one for analytical consideration.

The meaning of the ballot measure here is limited. The issue was merely demolish or remain. There were no other options such as use, ownership or funding put before the voters. Hence it is not possible to say the vote leaves as the only action possible, destruction. The ballot simply did not consider other options and in the final analysis is not determinative of "prudent" alternatives.

The Administrator believed the Highway Administration was "committed to demolition" as of the time the 1974 FEIS was prepared. As noted earlier, it is in the Memorandum of Agreement, signed in 1980, that the federal highway administration states it *may* provide funds for demolition following the results of the municipal ballot measure. Perhaps because of this misguided interpretation, the Administrator failed to consider some of the comments to

the Draft section 4(f) Determination submitted by the Department of the Interior and the appellant. It was suggested federal funding might be available to rehabilitate the Old Truss Bridge by both the DOI and appellant. Clerk's Record, Vol. I, Plaintiff's Complaint, Appendix D, Letter from James H. Rathlesberger, Special Ass't to the Ass't Secretary of the Interior, to Paul C. Gregson, Division Administrator of the Federal Highway Administration, p. 4,

" ... [w]e strongly recommend and urge that the FHWA engage in imaginative and concerted planning with involved Federal, State, and local officials, as well as private interests, to develop a viable adaptive-reuse of the Old Pasco Kennewick Bridge, consistent with other community needs, in lieu of demolition. We further recommend that the FHWA consider providing 80% funding for rehabilitation of the old bridge under the bridge replacement program ... . The FHWA should also consider their [the appellant's] bikeway program as a possible source of funds for an adaptive-reuse project as part of a local trail system."

The letter arrives at these conclusions following a brief reference to the policies of the federal highway administration on joint development of highway corridors and multiple use of roadway properties and national policy. See FHWA Policy and Procedures Memorandum 90–5, FHPM 7–7–8; § 4(f)—special effort to preserve historic sites; National Historic Preservation Act of 1966—80 Stat. 915, 16 U.S.C. § 470 et seq., "historical and cultural foundations of the Nation should be preserved as a living part of our community life and development," and Exec. Order No. 11593, 36 Fed.Reg. 8921 (1971), reprinted in 16 U.S.C. 470 (1974)—"Federal Government shall provide leadership in preserving, restoring, and maintaining the historic and cultural environment of the Nation."

The appellant's comments discuss consideration of federal funding for

"initial rehabilitation and possibly certain facets of longer term maintenance under the recently enacted section 141 of the Surface Transportation Assistance Act of [1978, Pub.L. No. 95–599, 92 Stat. 2689, 23 U.S.C. § 101, et seq.] ... [which] permit[s] DOT to make grants to local governments for projects enhancing safety and use of bicycles."

Clerk's Record, Vol. I, Plaintiff's Complaint, Appendix E, Reference No. 3, "Prospectus of Methods and Means for Maintaining the Retired Pasco-Kennewick Bridge as an essential Cross River Link in the Developing Tri-Cities Riverfront Trailway System," p. 7, April 1980.

The district court concluded "in all probability, federal funds could not or would not be used to finance the new historical property." Memorandum Opinion, October 21, 1981, p. 10. We can not make such a statement. It is necessary for the administrator to consider the potential of federal funds to maintain the Old Truss Bridge before we or any court can conclude the alternative was properly considered and found not feasible or prudent.

Brooks v. Coleman, 518 F.2d 17 (9th Cir. 1975) does not mandate a contrary result. In Brooks, the court determined it is not necessary for every conceivable variation of an alternative to be discussed before an environmental impact statement complies with NEPA. Once the document describes an alternative, the preparer is not required to list and discuss all of the variations of that alternative. In this case, the Administrator discusses two alternatives to destruction, "no action" and "save the bridge." The second alternative is characterized broadly; however, the discussion involves the single proposal by appellant to use the bridge as a bicycle and pedestrian facility. The § 4(f) Determination rejects this proposal because the municipalities refuse to provide maintenance funds.

The oversimplification by the administration has caused the problems here in dispute. The characterization of two alternatives is inadequate here because there are no subsections within those alternatives to demolition.

### III. CONCLUSION

We agree with the district court, appellant-Committee had standing to bring this suit and the action involving the Old Truss Bridge was intended by § 4(f) to come within its provisions.

We find the Secretary of Transportation acted arbitrarily in concluding there were no feasible and prudent alternatives as the determination only discussed funding by the cities or the appellant. There was no mention of the availability, or not, of federal funds for rehabilitation or preservation. In addition, the conclusions reached do not have adequate support for us to find a reasoned choice. We remand to the district court for that court to remand to the Secretary for a comprehensive § 4(f) Determination considering alternatives sufficiently.

We do not address any other issues raised by the parties, but leave them for another day.

Accordingly, the judgment of the district court is AFFIRMED in part and REVERSED AND REMANDED in part.

Appellants are awarded their costs on appeal.

SNEED, Circuit Judge, concurring:

I concur in Judge Anderson's opinion. I write only to underscore the sense of frustration that grips me when confronted by cases of this type. Years have passed since the demolition of this bridge was initially considered during which its eligibility for preservation as an historical landmark was enhanced. Agencies of government at both the state and federal level have been involved with each having its own perception of its mission and each subject to somewhat different rules and regulations. Out of such a melange of agencies any decision has difficulty emerging. Certainly it is quite likely that in the process of reaching a decision one or more of these agencies are going to bend a rule or two in a manner the courts will find improper. Such is the case here. This will add at least several years to the decision-making process and also enhance the venerability of the bridge which at present is younger than I. This is the system, however, under which we labor. Let these grumpy comments attest to the fact that in this case I find no pleasure in doing what, under the law, I must do.