Justice Kennedy,
concurring in part and concurring in the judgment.
I join Parts I, II, III-A through III-D, and IV of the opinion of the Court and agree that the judgment must be reversed. This separate writing is to underscore certain background principles for the conclusion that an agency’s decision to change course may be arbitrary and capricious if the agency sets a new course that reverses an earlier determination but does not provide a reasoned explanation for doing so. In those circumstances I agree with the dissenting opinion of Justice Breyer that the agency must explain why “it now reject[s] the considerations that led it to adopt that initial policy.” Post, at 550.
The question whether a change in policy requires an agency to provide a more reasoned explanation than when the original policy was first announced is not susceptible, in my view, to an answer that applies in all cases. There may be instances when it becomes apparent to an agency that the reasons for a longstanding policy have been altered by discoveries in science, advances in technology, or by any of the other forces at work in a dynamic society. If an agency seeks to respond to new circumstances by modifying its earlier policy, the agency may have a substantial body of data and experience that can shape and inform the new rule. In other cases the altered circumstances may be so new that the agency must make predictive judgments that are as difficult now as when the agency’s earlier policy was first an *536 nounced. Reliance interests in the prior policy may also have weight in the analysis.
The question in each case is whether the agency’s reasons for the change, when viewed in light of the data available to it, and when informed by the experience and expertise of the agency, suffice to demonstrate that the new policy rests upon principles that are rational, neutral, and in accord with the agency’s proper understanding of its authority. That showing may be required if the agency is to demonstrate that its action is not “arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.” 5 U. S. C. § 706(2)(A). And, of course, the agency action must not be “in excess of statutory jurisdiction, authority, or limitations, or short of statutory right.” §706(2)(C).
These requirements stem from the administrative agency’s unique constitutional position. The dynamics of the three branches of Government are well understood as a general matter. But the role and position of the agency, and the exact locus of its powers, present questions that are delicate, subtle, and complex. The Federal Government could not perform its duties in a responsible and effective way without administrative agencies. Yet the amorphous character of the administrative agency in the constitutional system escapes simple explanation.
If agencies were permitted unbridled discretion, their actions might violate important constitutional principles of separation of powers and checks and balances. To that end the Constitution requires that Congress’ delegation of lawmaking power to an agency must be “specific and detailed.” Mistretta, v. United States, 488 U. S. 361, 374 (1989). Congress must “‘clearly delineat[e] the general policy’” an agency is to achieve and must specify the “‘boundaries of [the] delegated authority.’” Id., at 372-373. Congress must “ ‘lay down by legislative act an intelligible principle,’ ” and the agency must follow it. Id., at 372 (quoting J. W. *537 Hampton, Jr., & Co. v. United States, 276 U. S. 394, 409 (1928)).
Congress passed the Administrative Procedure Act (APA) to ensure that agencies follow constraints even as they exercise their powers. One of these constraints is the duty of agencies to find and formulate policies that can be justified by neutral principles and a reasoned explanation. To achieve that end, Congress confined agencies’ discretion and subjected their decisions to judicial review. See Stewart & Sunstein, Public Programs and Private Rights, 95 Harv. L. Rev. 1193, 1248 (1982) (the APA was a “working compromise, in which broad delegations of discretion were tolerated as long as they were checked by extensive procedural safeguards”). If an agency takes action not based on neutral and rational principles, the APA grants federal courts power to set aside the agency’s action as “arbitrary” or “capricious.” 5 U. S. C. § 706(2)(A); Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U. S. 402, 416 (1971). For these reasons, agencies under the APA are subject to a “searching and careful” review by the courts. Ibid.
Where there is a policy change the record may be much more developed because the agency based its prior policy on factual findings. In that instance, an agency’s decision to change course may be arbitrary and capricious if the agency ignores or countermands its earlier factual findings without reasoned explanation for doing so. An agency cannot simply disregard contrary or inconvenient factual determinations that it made in the past, any more than it can ignore inconvenient facts when it writes on a blank slate.
This is the principle followed in the Court’s opinion in Motor Vehicle Mfrs. Assn. of United States, Inc. v. State Farm Mut. Automobile Ins. Co., 463 U. S. 29 (1983). There, Congress directed the agency to issue regulations that would “ ‘meet the need for motor vehicle safety.’ ” Id., at 33. The agency promulgated a regulation requiring cars to have passive-restraint systems — either airbags or automatic seat- *538 belts. Id., at 37. The agency based this regulation on its factual finding that these systems save lives. Id., at 35.
Following a change in Presidential administration, however, the agency reversed course and rescinded the regulation. In doing so, the agency did not address its prior finding that airbags save lives. Id., at 47-48. Indeed, “[n]ot one sentence” of the agency’s “rulemaking statement” in support of rescinding the regulation discussed the benefits of airbags. Id., at 48. This Court found the agency’s rescission arbitrary and capricious because the agency did not address its prior factual findings. See id., at 49-51.
The present case does not raise the concerns addressed in State Farm. Rather than base its prior policy on its knowledge of the broadcast industry and its audience, the FCC instead based its policy on what it considered to be our holding in FCC v. Pacifica Foundation, 438 U. S. 726 (1978). See In re Application of WGBH Educ. Foundation, 69 F. C. C. 2d 1250, 1254, ¶ 10 (1978) (“We intend strictly to observe the narrowness of the Pacifica holding”). The FCC did not base its prior policy on factual findings.
The FCC's Remand Order explains that the agency has changed its reading of Pacifica. The reasons the agency announces for this change are not so precise, detailed, or elaborate as to be a model for agency explanation. But, as the opinion for the Court well explains, the FCC’s reasons for its action were the sort of reasons an agency may consider and act upon. The Court’s careful and complete analysis — both with respect to the procedural history of the FCC’s indecency policies, and the reasons the agency has given to support them — is quite sufficient to sustain the FCC’s change of course against respondents’ claim that the agency acted in an arbitrary or capricious fashion.
The holding of the Court of Appeals turned on its conclusion that the agency’s explanation for its change of policy was insufficient, and that is the only question presented here. I agree with the Court that as this case comes to us from the *539 Court of Appeals we must reserve judgment on the question whether the agency’s action is consistent with the guarantees of the Constitution.