Flovonia PAYNE, et al., Plaintiffs,

v.

UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, et al., Defendants.

No. C-1-81-753.

United States District Court, S.D. Ohio, W.D.

Dec. 8, 1982.

John E. Schrider, Jr., Legal Aid Society of Cincinnati, Cincinnati, Ohio, for plaintiffs.

James W. Harper, Cincinnati, Ohio, Brenda Goranflo, Washington, D.C., for defendants.

## FINDINGS OF FACT, OPINION AND CONCLUSIONS OF LAW

CARL B. RUBIN, Chief Judge.

This matter is before the Court following trial and the presentation of evidence. Plaintiffs seek recovery against Hamilton County, Ohio for its failure to comply with the Community Development Block Grant Program (hereinafter "CDBG") as it pertains to the unincorporated area of Hamilton County, Ohio and recovery against the Department of Housing and Urban Development (HUD) for its failure to require such compliance.

In accordance with Rule 52 of the Federal Rules of Civil Procedure, the Court does herewith submit its Findings of Fact, Opinion and Conclusions of Law.

### I. Findings of Fact

(1) Since 1975, Hamilton County, Ohio has been a recipient of CDBG funds. In each year of receipt of such funds, the defendant, Hamilton County, Ohio, was required

to determine a Housing Assistance Plan (hereinafter "HAP").[1] In 1979, the HAP goals for new rental units was 45 units for elderly persons, 223 for small families and 141 for large family units.[2] In January of that year, the HUD area office published a Notice of Fund Availability (hereinafter "NOFA") for the Hamilton County area. This publication indicated that Section 8 funding for 170 units of new construction and 50 units of substantial rehabilitation was available.[3] The NOFA invited developers to submit proposals for such housing to HUD. No satisfactory proposal was received prior to May 14, 1979. At that time, the date for submitting proposals was extended to June 15, 1979.

(2) Two projects were approved and constructed. One entitled "Hidden Meadows" with 96 units in Colerain Township was not built until litigation over zoning problems had been resolved in the developers' favor by the state courts of Ohio.

A second project entitled "Winding Creek" likewise encountered zoning problems. Although conditional approval had been given to the developer, an opinion by the Prosecuting Attorney of Hamilton County, Ohio subsequently held that the property in question was not properly zoned for multiple housing. Litigation was commenced but dismissed prior to trial. Instead, the project was transferred to a site on Fields-Ertel Road in Symmes Township. Hamilton County contributed $82,000.00 towards the cost of acquisition from CDBG funds. Such sum amounted to 45% of the cost of acquisition.

(3) In 1980, HUD published a NOFA for 50 units of Section 8 new construction. The funds were available for projects located in Hamilton County outside of the City of Cincinnati. Of five proposals submitted,

HUD preliminarily approved a proposal entitled "Harrison Green", which was located in the Village of Harrison, Hamilton County, Ohio.

(4) In 1979, as part of the annual review of the County's performance under the CDBG program, defendant, HUD, determined that the County had failed to use available housing assistance funds to meet its HAP goals. On June 27, 1980, the HUD office approved Hamilton County's application for CDBG funds for the fiscal year 1980 but imposed five contract conditions. The conditions were as follows:

*Condition One:* The County would receive no CDBG funds until it implemented a mechanism for monitoring credit and insurance "redlining" in low income areas and implementing a mechanism for assisting small and minority contractors participating in the CDBG program.

*Condition Two:* 10% of the CDBG funds ($500,700.00) would be withheld until the County made available a site for assisted Section 8 housing to use the funds that had been reserved for the Winding Creek project in fiscal year 1979 funds. The site had to be approvable under HUD standards and to be made available at a cost which would make the project financially feasible even if this required the County to purchase the site with its own funds. This condition was to be met by November 15, 1980.

*Condition Three:* The CDBG would be reduced an additional 10% if the County did not by November 15, 1980 provide necessary local approval for a project using the 50 units of Section 8 new construction funds made available in 1980.

*Condition Four:* Sites for family-assisted housing were to be made available in six

---

1. According to witness Jack Brown, Director Economic & Market Analysis Division, HUD, Ohio area office, it is not expected that any community will fulfill 100% of its goal.

2. A distinction must be drawn between HAP goals for the city of Cincinnati and the city of Lincoln Heights and HAP goals for the balance of Hamilton County. Only the area both incorporated and unincorporated in Hamilton Coun-

ty exclusive of Cincinnati and Lincoln Heights is involved in this litigation.

3. Under Section 8 rental subsidies are provided for lower income families who qualify for such assistance. In addition, Section 8 provides funds to owners or developers of land who agree to make living units available to families eligible for rental subsidies.

of the eight townships in the County in which there was no HUD-assisted family housing. Specifically, the County was to provide a pre-selected site for a 50-unit Section 8 project or a cooperation agreement with CMHA (Cincinnati Metropolitan Housing Authority) to permit a 50-unit public housing project in six of those eight townships. Because HUD anticipated being able to fund the 100 units of family assisted housing in fiscal 1981, the condition required that such sites be made available in two townships by January 2, 1981. Failure to provide one of the two sites would lead to a 10% reduction in the CDBG. Failure to provide either site would cause a 20% reduction.

*Condition Five:* The County could not use CDBG funds to purchase a site for assisted housing until the County had preliminarily determined that the site was acceptable. The County executed the Agreement with the conditions imposed on August 29, 1980.

(5) Conditions Two and Three were extended from November 15, 1980 to January 15, 1981 in view of progress made by the County, both by removing the Winding Creek project to the Fields-Ertel Road site in Symmes Township and by seeking approval from the Village of Harrison for the project known as "Harrison Green." Condition Four was likewise amended to provide that the six sites need not be in six separate townships. More than one site could be in a township so long as the housing was outside of areas of low income and/or minority concentration.

(6) On March 27, 1981, Condition Two was cleared by HUD. The County had satisfied the condition by securing a site referred to as Fields-Ertel and such project was constructed.

(7) The Harrison Green project was rejected in June of 1981 by the Harrison Village Council. HUD informed Hamilton County on June 9th that it would be required to submit an alternative site for those units within 60 days or the 10% reduction required by Condition Three would be imposed.

(8) A NOFA for fiscal year 1981 inviting proposals for 100 units of family housing in Hamilton County, excluding Cincinnati and Lincoln Heights, was published by HUD on November 12, 1980. No proposal had received a fund reservation by May 22, 1981 when HUD rescinded all unreserved Section 8 new construction funds due to an anticipation of recission of HUD appropriations. The rescission was approved by Congress on June 5, 1981 and no proposals received in response to the fiscal year 1981 NOFA could be funded.

(9) On June 9, 1981, HUD removed Condition Four because two sites for housing had been submitted but not approved because of a lack of additional Section 8 funding. The projects in question were known as "Cherokee Townhouses" and "Woods of Northgate."

(10) In an effort to satisfy Condition Three, Showe Builders, the developer of the Harrison Township project, submitted a plan for 40 units on Anderson Ferry Rd. in Green Township. Both the Ohio, Kentucky, Indiana Regional Council of Government (OKI) and the HUD office environmental clearance officer determined that the site in question was inconsistent with regional plans and housing policies and subject to adverse environmental conditions. Substantial evidence was presented indicating that both of these positions were correct. The funds reserved for the Harrison Green project were subsequently transferred to a project known as "Loveland Pines" in the City of Loveland, Ohio. Litigation not involved with the matter herein has prevented this project from being completed.

(11) On June 29, 1981, the CDBG application for Hamilton County for 1981 was approved. At that time, Conditions One, Two and Five had been fully satisfied, Condition Four had been released due to a lack of funds and the County was attempting to comply with Condition Three in accordance with the new deadline. Section 8 allocations were withdrawn in 1981 (See Finding of Fact 8) and as a result, the Ohio area office has had no funds to make available to Hamilton County since June, 1981 under either of the housing production programs.

## II. Opinion

*Standing:*

Initially, the Court must address HUD's assertion that plaintiffs lack the standing necessary for the Court to entertain this lawsuit.

The Supreme Court has considered this issue in a number of cases, and has described the conditions to be met before a party can claim standing to bring suit in federal court. *See, e.g., Duke Power Co. v. Carolina Environmental Study Group,* 438 U.S. 59, 72–81, 98 S.Ct. 2620, 2629–2634, 57 L.Ed.2d 595 (1978); *Arlington Heights v. Metropolitan Housing Corp.,* 429 U.S. 252, 260–64, 97 S.Ct. 555, 560–562, 50 L.Ed.2d 450 (1977); *Simon v. Eastern Ky. Welfare Rights Org.,* 426 U.S. 26, 37–46, 96 S.Ct. 1917, 1923–1928, 48 L.Ed.2d 450 (1976); *Warth v. Seldin,* 422 U.S. 490, 498–518, 95 S.Ct. 2197, 2204–2215, 45 L.Ed.2d 343 (1975); *United States v. SCRAP,* 412 U.S. 669, 683–90, 93 S.Ct. 2405, 2413–2417, 37 L.Ed.2d 254 (1973).

■ In its constitutional aspect, the standing question "is whether the plaintiff has 'alleged such a personal stake in the outcome of the controversy' as to warrant *his* invocation of federal court jurisdiction and to justify exercise of the court's remedial powers on his behalf." *Simon, supra,* 426 U.S. at 38, 96 S.Ct. at 1924 (quoting *Warth, supra,* 422 U.S. at 498–99, 95 S.Ct. at 2204–2205) (emphasis in original). The plaintiff must demonstrate an actual injury to himself and show that the injury "is indeed fairly traceable to the defendant's acts or omissions." *Arlington Heights, supra,* 429 U.S. at 261, 97 S.Ct. at 561. In ruling on a challenge to standing, a court must accept as true all material allegations of the complaint and construe the complaint in favor of the complaining party. *Warth, supra,* 422 U.S. at 501, 95 S.Ct. at 2206.

■ Under these standards, plaintiffs have demonstrated the minimum requirements for standing. Plaintiffs have alleged that they have been denied housing opportunities in Hamilton County, excluding Cincinnati and Lincoln Heights, due to a shortage in Section 8 housing in those areas. They further allege that the shortage is a direct result of defendants' acts. Finally, plaintiffs allege that, if Section 8 housing were available in the areas in question, they would qualify for residence in that housing. Assuming these allegations to be true, as the Court must, plaintiffs have suffered an actual injury in the form of a denial of housing opportunities, *see Arlington Heights, supra,* 429 U.S. at 264, 97 S.Ct. at 562, and that injury is traceable to defendant's conduct. *Id.* Consequently, plaintiffs have met the minimum requirements for standing, although the Court notes that this determination in no way reflects on the merits of plaintiffs' claim. *Warth, supra,* 422 U.S. at 500, 95 S.Ct. at 2205.

### HUD's Liability

■ Turning to the merits, it is apparent that HUD has not acted improperly in administering its Hamilton County housing programs.

The standard of review which the Court must employ in evaluating HUD's conduct is found in the Administrative Procedure Act, 5 U.S.C. § 706(2)(a), which provides that a reviewing court shall hold unlawful and set aside any agency action found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." The agency action is entitled to a presumption of validity, and the Court may not substitute its judgment for that of the agency simply because the Court might have acted differently. *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 415–416, 91 S.Ct. 814, 823, 824, 28 L.Ed.2d 136 (1971).

The evidence in this case establishes that HUD's conduct was in no way arbitrary, capricious or an abuse of discretion. HUD continually monitored the Hamilton County housing program and applied its second most severe sanction when it appeared that the program was not proceeding properly. (Finding of Fact No. 4.) HUD's subsequent removal of Condition Four was prompted by a lack of funding, (*see* Findings of Fact Nos. 9 and 11), and was not, as plaintiffs

claim, arbitrary, capricious or an abuse of discretion. In short, after careful review of the evidence, the Court can find no action by HUD that must be set aside as violative of the standards in 5 U.S.C. § 706(2)(a).

### Liability of the County Commissioners

 The Court also finds no basis for imposing liability on the Hamilton County Commissioners. Insofar as HUD has determined that the County has failed to comply with the requirements of the CDBG program, plaintiffs' sole remedy is through the administrative procedures outlined in 42 U.S.C. § 5311. *People's Housing Development Corp. v. Poughkeepsie,* 425 F.Supp. 482, 492–93 (S.D.N.Y.1976). Since the Court has determined that HUD has not acted arbitrarily or abused its discretion, the Court may not interfere in that administrative process. *Id.* Similarly, insofar as no determination of non-compliance has been made by HUD, the Court may not second-guess the judgment of the County Commissioners or otherwise usurp their legislative role. *See Bradley v. HUD,* 658 F.2d 290, 294–95 (5th Cir.1981).

### Conclusions of Law

(A) The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

(B) Plaintiffs have standing to bring this action.

(C) HUD's actions in this matter have not been arbitrary, capricious or an abuse of discretion.

(D) Insofar as HUD has determined that the County has failed to comply with the requirements of the CDBG program, plaintiffs' sole remedy is through the administrative procedures outlined in 42 U.S.C. § 5311.

(E) Insofar as no determination of non-compliance has been made by HUD, the Court may not substitute its judgment for that of the County Commissioners or otherwise usurp their legislative role.

(F) In accordance with the foregoing, plaintiffs' claim should be and it is hereby DISMISSED.

IT IS SO ORDERED.