SOUTHWEST CENTER FOR
BIOLOGICAL DIVERSITY,
Plaintiff,

v.

Dan GLICKMAN, et al., Defendants.

No. CV 95–879.

United States District Court,
D. Arizona.

March 14, 1996.

Matthew Gilbert Kenna, Geoffrey Brent Hickcox, Kenna & Associates P.C., Durango, CO, for Southwest Center for Biological Diversity.

Eugene R. Bracamonte, United States Attorney, Tucson, AZ, Ellen Athas, U.S. Department of Justice, Environment & Natural Resources Div., Washington, DC, for United States Forest Service, John McGee.

Eugene R. Bracamonte, United States Attorney, Tucson, AZ, for Dan Glickman.

## ORDER

WILLIAM D. BROWNING, District Judge.

Pending before the Court are:

(1) Plaintiff's February 9, 1996 Motion for Summary Judgment;

(2) Defendants' February 21, 1996 Cross–Motion for Summary Judgment; and

(3) Defendants' March 5, 1996 Motion to Strike Extra–Record Documents.

Each is addressed and resolved.

### Factual and Procedural Background

In this action, Plaintiff challenges Defendants' proposed emergency sale of salvage timber in the Douglas District of the Corona-do National Forest. Defendants are Department of Agriculture Secretary Dan Glickman, the United States Forest Service, and Coronado National Forest Supervisor John McGee.

In 1994, a severe forest fire burned or damaged over 27,500 acres of Arizona's Coronado National Forest. Administrative Record ("A.R.") at 155. In August 1995, Defendants determined that harvesting some of this downed and rapidly deteriorating timber would be an appropriate step under the Emergency Salvage Timber Sale Program, which was provided for in the 1995 Rescissions Act, Pub.L. No. 104–19, § 2001, 109 Stat. 240–47 (1995) (hereinafter "Rescissions Act"). Consequently, the Forest Service approved the sale.

The salvage sale was designed to: 1) allow recovery of merchantable timber without significant environmental effects; 2) utilize fire-damaged and dead trees before their timber value was lost to insect infestation, root rots, and disease, thereby reducing the risk of future wildfire; 3) improve the site for natural revegetation of native plant species; and 4) reduce the amount of erosion and soil loss over time on this totally burned area. A.R. at 155.

On August 14, 1995, a Forest Service biologist conducted a Biological Assessment and Evaluation ("BAE") and concluded that the planned sale would have no effect on listed or endangered species including the Mexican Spotted Owl ("MSO"), and further concluded that there were no extraordinary circumstances that would prohibit the sale. A.R. at 87–89. Given this "no effect" finding, and the relatively small size of the proposed salvage sale, the Forest Service determined that the sale satisfied the criteria for a categorical exclusion from the requirement to conduct an environmental assessment ("EA"). See National Environmental Policy Act of 1969 ("NEPA"), 42 U.S.C. §§ 4321–4347; see also 40 C.F.R. § 1508.4 (implementing NEPA); Forest Service Handbook ("FSH") 1909.15, Ch. 30.1 et seq. (Forest Service policy on categorical exclusions). Consequently, an EA was not conducted.

### Rescissions Act

This bill was signed into law on July 27, 1995. It sets forth expedited procedures pursuant to which the Agriculture Secretary must prepare, advertise, offer, and award all

contracts for salvage timber sales. This expedited procedure protocol demonstrates that Congress' intent in creating the emergency salvage timber sale program was to harvest as soon as possible and to the maximum extent possible the backlogged salvage timber in our nation's forests. *See* Rescissions Act § 2001(b)(1); *see also* Conference Report to H.R. 1158, H.R. 104–124, 104th Cong., 1st Sess. (1995).

Although the Rescissions Act consists of numerous provisions, only a select few are at issue in the instant case. First, § 2001(c)(1) requires that for each timber salvage sale, the Agriculture Secretary must prepare a document that combines an EA called for in § 102(2) of NEPA, and the biological assessment ("BA") required by § 7(a)(2) of the Endangered Species Act ("ESA"). The Rescissions Act goes on to provide, however, that such documents need consider the salvage sale's potential environmental impacts only to the extent which the Secretary, *in his sole discretion*, deems appropriate and feasible. § 2001(c)(1)(A). The Secretary's discretion in preparing this document is similarly broad with respect to the salvage sale's potential impact on threatened species. *Id.* Finally, in preparing this document, the Secretary has the sole discretion whether to conform to any standards or guidelines from the management plans or policies applicable to the affected national forest. *Id.* The breadth of the Secretary's discretion, therefore, is vast. The scope and content of the combined environmental/biological documents, and the information prepared, considered, and relied upon to reach a decision, rest *within the sole discretion* of the Secretary.

In conducting emergency salvage timber sales, the Secretary is constrained only by the requirements of the Rescissions Act. Section 2001(i) provides that the documents and procedures required by the Rescissions Act are expressly deemed to satisfy all otherwise applicable federal environmental and natural resource laws, including NEPA and ESA.

■ Further evidence of Congress' intent to facilitate speedy sales of salvage timber can be found in the Act's judicial review provisions. Section 2001(f)(4) provides that the district court shall have authority to permanently enjoin, order modification of, or void an individual salvage sale "if it is determined by a review of the record that the decision to prepare, advertise, offer, award, or operate such sale was arbitrary and capricious or otherwise not in accordance with applicable law (other than those laws specified in subsection (i))." Thus, the Court may look only to the administrative record, the Court's review is under the very deferential "arbitrary and capricious" standard, and the requirements of all otherwise applicable laws are immaterial. For these reasons, and in view of the wide latitude granted the Secretary to consider environmental and biological impacts, the scope of judicial review under the Act is extremely limited. One court characterized the limited judicial review thusly: "Given the extremely deferential standard of review a court must apply ... a challenger must go a long way to have a decision overturned." *Kentucky Heartwood, Inc. v. United States Forest Service,* 906 F.Supp. 410, 414 (E.D.Ky.1995).

### Plaintiff's Challenges

Plaintiff asserts that the Secretary abused his discretion in three ways:

1. The plain language of the Act requires the Secretary to prepare a combined EA/BA and the sole statutory exception only applies when the Secretary relies on preexisting documents; since the Secretary admittedly did not prepare a combined assessment, and since the lone statutory exception is inapplicable, Plaintiff argues the Secretary abused his discretion.

2. Alternatively, the Secretary abused his discretion in relying on the "no effect" conclusion reached in the August 14, 1995 BA & E conducted by Forest Service biologist Gary Helbing; the BA & E did not comply with the Endangered Species Act, under which the BA & E was prepared, nor did it comply with express Fish and Wildlife Service policies concerning federally protected species.

3. Finally, the Secretary abused his discretion in categorically excluding the pro-

posed sale from the requirement of performing an EA; the presence of the Mexican Spotted Owl is an "extraordinary circumstance" that mandates an EA when one would otherwise not be required.

### "Arbitrary and Capricious" Standard of Review

■ An agency decision may be deemed arbitrary and capricious if the agency fails to consider all relevant factors, *see Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 416, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971), or if the agency has "offered an explanation for its decision that runs counter to the evidence before the agency" or has failed to articulate "a rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n of United States, Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43, 103 S.Ct. 2856, 2866, 77 L.Ed.2d 443 (1983) (internal citation omitted); *see also Natural Resources Defense Council v. EPA*, 966 F.2d 1292, 1297 (9th Cir.1992). Review under the arbitrary and capricious standard is searching and careful, but narrow, and the court may not substitute its judgment for that of the agency. *Marsh v. Oregon Natural Resources Council*, 490 U.S. 360, 378, 109 S.Ct. 1851, 1861, 104 L.Ed.2d 377 (1989).

■■ A deferential approach is "especially appropriate where, as here, the challenged decision implicates substantial agency expertise." *Mt. Graham Red Squirrel v. Espy*, 986 F.2d 1568, 1571 (9th Cir.1993) (citing *United States v. Alpine Land and Reservoir Co.*, 887 F.2d 207, 213 (9th Cir.1989), *cert. denied*, 498 U.S. 817, 111 S.Ct. 60, 112 L.Ed.2d 35 (1990)). *See FCC v. National Citizens Comm. for Broadcasting*, 436 U.S. 775, 813–14, 98 S.Ct. 2096, 2121–22, 56 L.Ed.2d 697 (1978) (where the agency's particular technical expertise is involved, the court must be particularly zealous in guarding the agency's discretion). "When specialists express conflicting views, an agency must have discretion to rely on the reasonable opinions of its own qualified experts even if, as an original matter, a court might find contrary views more persuasive." *Marsh*, 490 U.S. at 378, 109 S.Ct. at 1861.

### Was the Failure to Prepare a Combined EA/BA Arbitrary and Capricious?

■ Plaintiff relies on the following provision for the proposition that the Secretary's failure to prepare a combined EA/BA is a *per se* violation of the Act and, necessarily, an abuse of discretion:

> For each salvage timber sale ..., the Secretary concerned shall prepare a document that combines an environmental assessment under [NEPA and its implementing regulations] and a biological evaluation under [ESA] and other applicable Federal law and implementing regulations.

Rescissions Act § 2001(c)(1)(A). But Plaintiff's argument that the plain language of this provision *absolutely requires* a combined EA/BA in every case misses the point. One of the primary purposes of the timber sale rider to the Rescissions Act is to expedite the emergency sale of jeopardized salvage timber before the timber becomes economically worthless. In order to expedite the sales, the Act lowers if not removes many of the hurdles that otherwise must be overcome with respect to ordinary logging. Perhaps more important, Plaintiff concedes that there are instances contemplated by NEPA (and embodied in the Forest Service policy handbook) wherein an EA is not required at all. Thus, if the relatively stringent requirements by NEPA occasionally allow for a timber sale to be conducted without an EA, it strains the imagination to believe that the relatively relaxed protocol promulgated by the Rescissions Act would require an EA in *every* instance. Such a result would defeat Congress' intent underlying the Rescissions Act.

Accordingly, the Court holds as a matter of law that the Secretary's failure to prepare a combined EA/BA is not *per se* a violation of the Rescissions Act. Although such failure, under particular circumstances, may constitute an abuse of discretion—and thus a violation of the Act—it cannot be said that *all* such failures necessarily violate the Act.

### Was the "No Effect" Decision on the MSO Arbitrary and Capricious?

On August 14, 1995, a Forest Service biologist performed a biological assessment and evaluation ("BA & E") on the area affected

by the proposed sale. He concluded that the proposed sale would have "no effect" on the Mexican spotted owl. A.R. 87–89. This "no effect" finding was crucial inasmuch as the Forest Service relied on it in deciding not to prepare an EA before initiating the proposed sale.

Plaintiff challenges the "no effect" finding, arguing that the methodology used by the biologist, and the information upon which he relied, were highly inadequate. Specifically, Plaintiff argues that the biologist knew or should have known that the proposed sale affects trees that are within one mile of the MSO habitat, and further that he knew or should have known that the proposed sale would affect the forest composition of the owl's habitat. In addition, Plaintiff argues that the biologist violated the ESA by not consulting with the Fish and Wildlife Service in conducting the BA & E. Finally, Plaintiff asserts that the Secretary's reliance on such a tainted finding amounts to abuse of discretion.

■■■ Plaintiff's argument focuses on the scope and content of the BA & E. The Rescission Act provides that the scope and content of such documents are matters solely within the discretion of the Secretary. § 2001(c)(1)(A). Thus, insofar as the scope and content of the BA & E are concerned, the Secretary's discretion is *unreviewable.* Moreover, the Rescissions Act expressly provides that documents such as the BA & E prepared by the biologist are expressly deemed to comply with NEPA, ESA, and other federal environmental and natural resource laws. § 2001(i). Accordingly, the Court need not determine that the BA & E satisfies the ESA in order to conclude that the document satisfies the relaxed provisions of the Rescissions Act.

■■■ The only published opinion construing the Rescissions Act is particularly illustrative. There, the court held that:

[I]f the Forest Service correctly determines that a certain sale may be conducted under the Salvage Timber rider, that sale may proceed *even if it has a detrimental impact on an endangered or threatened species* ... As Congress is the fountain-head for all environmental and natural resources laws, it clearly has the power to create blanket exemptions from those same laws. Although the wisdom of such exemptions might be debated, the authority to so exempt is incontrovertible.

*Kentucky Heartwood, Inc. v. United States Forest Service,* 906 F.Supp. 410, 415 (E.D.Ky.1995) (emphasis added). Thus, it appears that in the timber sale rider to the Rescissions Act, Congress has created a blanket exemption to environmental laws that otherwise would apply. While the provisions of NEPA, ESA, and other applicable federal laws are relevant, they serve only as guidelines in preparing EAs and BAs under the exigent circumstances contemplated by the Rescissions Act.

■■■ Having decided that the Forest Service need not comply with the ESA in preparing BAs pursuant to the Rescissions Act, the Court still must determine whether the Secretary abused his discretion in relying on the biologist's "no effect" finding. A thorough review of the administrative record reveals that the BA & E is fairly thorough and well-reasoned. Although Plaintiff could proffer contradictory expert opinion, the Court's standard of review is not *de novo.* See generally *National Citizens Comm. for Broadcasting,* 436 U.S. at 813–14, 98 S.Ct. at 2121–22. Therefore, according appropriate deference to Forest Service expertise on such matters, the Court concludes that the Secretary did not abuse his discretion in relying on the "no effect" finding.

## Was the Decision to Apply a Categorical Exclusion Arbitrary and Capricious?

■■■ Plaintiff next argues that the peculiar facts of this case demonstrate that the Forest Service's failure to prepare an EA was an abuse of discretion. Specifically, Plaintiff asserts that the presence of the MSO is an "extraordinary circumstance" that renders the proposed sale not amenable to categorical exclusion from the requirement of preparing an EA.

At the outset, it is important to note that Plaintiff does not contest the availability of categorical exclusions. Indeed, the Forest Service Handbook ("FSH") sets forth pro-

cedures for implementation of categorical exclusions. FSH 1909.15, Ch. 30. These procedures specifically allow a sale to be categorically excluded from documentation in an EA or environmental impact statement where the proposed action is within a listed category and there are no "extraordinary circumstances." FSH 1909.15, Ch. 30.3(1)(b). Inasmuch as the proposed sale would remove less than 1,000,000 board feet of timber and does not require low standard road construction, the proposed sale falls within a category for which a categorical exclusion is required. FSH 1909.15, Ch. 31.2(4).

Plaintiff's point of contention, however, is that there is an "extraordinary circumstance" that should preclude the sale's implementation, specifically the nearby presence of the MSO. Defendants concede that the presence of protected species is an "extraordinary circumstance" under the Forest Service Handbook 1909.15, Ch. 30.3(2), but argue that the Forest Service's "no effect" finding conclusively establishes that the "extraordinary circumstance" exception to the categorical exclusion is not applicable.

In many ways, this question is similar to the one addressed above regarding whether the Secretary abused his discretion in relying on the biologist's "no effect" finding. Indeed, it would be inconsistent to conclude that the MSO is not affected for the purpose of *biological* analysis, but then conclude that it *is* affected for the purpose of environmental analysis. The question, therefore, is whether the Secretary abused his discretion in applying the categorical exclusion. In invoking the categorical exclusion, the Secretary necessarily relied on the biologist's "no effect" finding in the BA & E. Such reliance most assuredly cannot amount to an abuse of discretion. This being true, the Court concludes that the Secretary did not abuse his discretion in applying the categorical exclusion to these facts. In light of the BA & E's conclusion that the sale would not affect the MSO, it was not arbitrary or capricious for the Secretary to conclude that the MSO was not "present" so as to necessitate an EA.

### *Defendants' Motion to Strike*

██ The Court previously notified the parties by phone of the Court's decision to grant this motion. All documents submitted by the parties not included in the administrative record compiled by Defendants will be stricken and not considered by the Court. The documents in question either were not considered by Defendants in deciding whether to conduct the proposed sale or are post hoc rationalizations defending their decision. Neither category is appropriate for judicial review under the Rescissions Act.

### *Conclusion*

Accordingly, IT IS **ORDERED** that:

(1) Plaintiff's February 9, 1996 Motion for Summary Judgment is **DENIED;**

(2) Defendants' February 21, 1996 Cross–Motion for Summary Judgment is **GRANTED;**

(3) Defendants' March 5, 1996 Motion to Strike Extra–Record Documents is **GRANTED;**

(4) All affidavits, declarations, newspaper articles, and other documents submitted by the parties that are not included in the formal administrative record are **STRICKEN;** and . . .

(5) This action is **DISMISSED.**