708 F.2d 137
 20 ERC 1845
 CLEVEPAK CORPORATION, Appellant,
v.
The UNITED STATES ENVIRONMENTAL PROTECTION AGENCY and
Charles R. Jeter, Regional Administrator of the
EPA and Orange Water and Sewer Authority
and Dickerson, Inc., Appellees.
 No. 82-1390.
 United States Court of Appeals,
Fourth Circuit.
 Argued Nov. 11, 1982.
Decided June 3, 1983.
 
 John E. Haigney, New York City (James T. Williams, Jr., Brooks, Pierce, McLendon, Humphrey & Leonard, Greensboro, N.C., Ronald M. Glick, Ide & Haigney, New York City, on brief), for appellant.
 Claire L. McGuire, Dept. of Justice, Koy E. Dawkins, Monroe, N.C. (Claude V. Jones, Durham, N.C., Robert M. Perry, Gen. Counsel, Gerald H. Yamada, Associate Gen. Counsel, Lee A. DeHihns, Asst. Gen. Counsel, Steve Sorett, E.P.A., Anthony C. Liotta, Acting Asst. Atty. Gen., Anne S. Almy, Dept. of Justice, Washington, D.C., on brief), for appellees.
 Before WIDENER and SPROUSE, Circuit Judges, and HAYNSWORTH, Senior Circuit Judge.
 WIDENER, Circuit Judge:
 
 
 1
 Clevepak Corporation (Clevepak), which had submitted a price quotation for a jet aerator system (aerator) to a disappointed bidder, protested to the grantee of the Environmental Protection Agency (EPA) the award of a subcontract to its competitor by the prime contractor of the grantee of the EPA. The grantee denied the protest, which the Regional Administrator (Administrator) of the EPA then heard and dismissed. Clevepak sought judicial review in the district court, which denied its claims. Clevepak appeals from the district court's judgment, and we affirm.
 
 
 2
 The EPA awarded the Orange Water and Sewer Authority (Authority) a construction grant for the construction of the Mason Farms Project, a wastewater treatment plant near Carrboro, North Carolina.[1] In early 1981, the Authority solicited bids from contractors for construction of the plant.
 
 
 3
 Dickerson, Inc. (Dickerson) was the low bidder, and on March 24, 1981, the Authority awarded Dickerson the general contract for the construction of the project. Dickerson's responsibility as general contractor included building the project according to the design and specifications of the Authority's consulting engineers, Moore, Gardner & Associates. A specific obligation of the general contractor was the procurement of an aerator, an essential component of the wastewater treatment plant. The original bid specifications required that the manufacturer of the aerator be "regularly engaged in design, fabrication and marketing of a complete jet aeration system" and be "Pentech, Aerocleve, or [their] equal."
 
 
 4
 Dickerson, Lee Construction Company, and Ballenger Corporation, the general contract bidders, all had solicited price quotations from potential subcontractors and suppliers, and had used such quotations in figuring their bids on the job. Dickerson's bid listed T. Combs as its supplier for the Aerator; Lee Construction Company's bid listed Clevepak; and Ballenger Corporation's bid listed Pentech.
 
 
 5
 Unlike Clevepak and Pentech, which were both manufacturers of aerators, T. Combs was a manufacturer's representative. Combs had represented Pentech since 1980, and had helped Pentech prepare a price quotation for the aerator in the Mason Farms Project. Pentech, which had been part of Houdaille Industries, was acquired by Clevepak on April 1, 1981. Clevepak alleges that, with the acquisition of Pentech, it acquired an assignment of any interest Pentech had in the Authority's bid solicitation.[2]
 
 
 6
 On June 8, 1981, Dickerson issued a purchase order for an aerator to Jet-Tech, Inc. (Jet Tech), and a few days later informed Clevepak of the order. Clevepak telegraphed its protest to the Authority, claiming that the subcontract between Dickerson and Jet Tech violated 40 C.F.R. Secs. 35.936-13, 35.936-15(a), and 35.938-4(h). Without reaching the merits or conceding that Clevepak had any right of protest, the Authority denied the protest as untimely, taking the not unrealistic position that Clevepak knew or should have known that its quotation was not the one accepted in April 1981.
 
 
 7
 Clevepak requested the Administrator to review the Authority's disposition of the protest. The Administrator determined that he did not have to address the timeliness issue because Clevepak had failed to raise a protestable matter for review. The Administrator noted that the protestable matters for subcontractors were greatly limited under EPA regulations. Protests of subcontract awards or purchase orders under a competitively bid, lump-sum construction contract are prohibited, except for a limited range of issues. 40 C.F.R. Sec. 35.939(j)(6). The only protestable issues relevant to Clevepak's case are alleged violations of the Sec. (6)(i) specification requirements of 40 C.F.R. Sec. 35.936-13, and the Sec. (6)(ii) procurement procedures of 40 C.F.R. Sec. 35.938-9. Section 35.938-9(a) broadly exempts a prime contractor's awards to subcontractors from EPA regulations except as specifically provided in subsections 9(b)(1)-(7). Only two of Clevepak's three claims even arguably fell within the scope of these regulations of subcontract awards as protestable, namely, Clevepak's allegations of violation of subsections 9(b)(3) and 9(b)(4).[3]
 
 
 8
 The Administrator proceeded to address Clevepak's assertion that Jet Tech failed to meet the responsibility standards in 40 C.F.R. Sec. 30.340-2(c), which apply to subcontractors by Sec. 35.938-9(b)(4).[4] Specifically, the Administrator considered whether Jet Tech had "a satisfactory record of integrity, judgment, and performance." 40 C.F.R. Sec. 30.340-2(c).
 
 
 9
 The Administrator characterized the Authority's determination of a subcontractor's responsibility as largely "a discretionary matter involving the business judgment of officials closest to the actual transaction [sic] who must be prepared to work with the selected contractor throughout the life of contract performance." Although the EPA's regulations do not set standards for reviewing a grantee's determination of a subcontractor's responsibility, they do permit the Administrator to rely on relevant decisions of the Comptroller General or the Federal Courts. 40 C.F.R. Sec. 35.939(f)(2)(ii). In this case, the Administrator relied on the rule, used by the Comptroller General in reviewing cases of contractor and subcontractor responsibility,[5] that he should not review a determination of responsibility unless the protesting party adduces adequate evidence of the contracting officer's fraud, bad faith, or violation of specific, objective standards of responsibility required by the bid solicitation. The Administrator concluded that Clevepak had not presented adequate evidence of the grantee's fraud or bad faith, and that it had not pointed to any specific, objective standard of responsibility in the bid solicitation.
 
 
 10
 The only evidence in the entire administrative record that suggests Jet Tech may have lacked a satisfactory record of performance, as required by EPA regulations, is a photocopy of Jet Tech's Articles of Incorporation. That copy shows that the Articles were filed on June 12, 1981, the day Jet Tech received its purchase order from Dickerson. The Administrator, however, read Sec. 30.340-2(c) and the bid specification's quality standards for the maker of the aerator as limited by the language of 40 C.F.R. Sec. 35.936-13(c), which severely curtails the use of experience clauses that require a manufacturer to have a record of satisfactory operation for a specified period of time. Concluding that Clevepak had no basis to contest Jet Tech's participation in the Mason Farms Project, the Administrator dismissed the protest.
 
 
 11
 The scope of judicial review of the Administrator's decision is governed by the Administrative Procedure Act, 5 U.S.C. Sec. 706. As informal agency action, the Administrator's dismissal of Clevepak's protest is considered by us under a narrow standard of review. The function of judicial review here is to determine whether the agency acted within its authority, whether the agency complied with prescribed procedures, and whether the agency's action was "arbitrary or capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. Sec. 706(2)(A), (D); Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 415-417, 91 S.Ct. 814, 823-824, 28 L.Ed.2d 136 (1971).
 
 
 12
 The Administrator's decision is entitled to great deference, but must be supported by a rational basis in the administrative record. American Meat Institute v. Department of Agriculture, 646 F.2d 125, 127 (4th Cir.1981). The agency must disclose the basis of its order. Burlington Truck Lines v. United States, 371 U.S. 156, 168, 83 S.Ct. 239, 245, 9 L.Ed.2d 207 (1962). Although this court may not substitute its judgment or justification for those of the agency, SEC v. Chenery Corp., 332 U.S. 194, 196, 67 S.Ct. 1575, 1577, 91 L.Ed. 1995 (1947), we will uphold an agency decision of less than ideal clarity if the agency's reasoning is reasonably discernible. Bowman Transportation, Inc. v. Arkansas-Best Freight System, Inc., 419 U.S. 281, 286, 95 S.Ct. 438, 442, 42 L.Ed.2d 447 (1974). Furthermore, we must, in our review, give great deference to the EPA's interpretation of its own regulations. Udall v. Tallman, 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965).
 
 
 13
 With the proper standard of review in mind, we consider Clevepak's claims. The first is that the Administrator disregarded EPA regulations which require grantees to afford bid protesters an adversary proceeding for a determination of responsibility after receiving a timely protest. See 40 C.F.R. Sec. 35.929(d). The bid protest procedures, however, are not available to parties protesting the award of subcontracts, except as specifically provided for by the terms of 40 C.F.R. Sec. 35.939. 40 C.F.R. Sec. 35.938-9. Section 35.939 does not make its bid protest procedures applicable to subcontract protests. Therefore, the Administrator need not require the grantee to comply with the procedural requirements of Sec. 35.939.
 
 
 14
 Clevepak next contends that the Administrator acted arbitrarily in finding that the Authority made a determination of Jet Tech's responsibility when awarding the prime contract to Dickerson on March 4, 1981. Jet Tech did not then exist as a corporate entity, and Dickerson's bid then listed T. Combs as its supplier for the aerator. Clevepak argues that the Authority could not rationally have determined the responsibility of a nonexistent corporation.
 
 
 15
 It is reasonably clear, however, that the Administrator knew that Jet Tech did not exist in March 1981; the affirmative determination, of which he wrote, was of the prime contractor's responsibility and of the responsibility of the suppliers that may later subcontract with the prime contractor. The Administrator obviously believed no more was required to determine the responsibility of a subcontractor, and in the absence of any contrary authority, we defer to his judgment. Moreover, the Administrator's view of what constitutes an affirmative determination of responsibility is consistent with the EPA's regulatory scheme, which is designed to prevent the agency from becoming embroiled in contract disputes between a prime contractor and its suppliers. See generally 40 C.F.R. Secs. 35.938-9, 35.939(j)(6).
 
 
 16
 Clevepak maintains that, even if the grantee had affirmatively determined Jet Tech's responsibility, the Administrator arbitrarily concluded that Clevepak failed to suggest a violation of a definite responsibility criterion set out in the bid solicitations. Clevepak points to its allegations that Jet Tech had no prior experience in making aerators and to Sec. 13DD(b) of the bid solicitation which specifies that the aerator be made by a firm "regularly engaged in ... marketing" aerators.
 
 
 17
 The Administrator clearly was aware of these allegations. Nevertheless, he concluded that Clevepak had not suggested a violation of a definite responsibility criterion, and so refused to question the affirmative determination of Jet Tech's responsibility. We need only point out that Sec. 13DD(b) is entitled "Quality Standards" and is obviously to insure the quality of the aerator, not the length of time its manufacturer has been engaged in that calling. The Administrator's decision reveals that he did not treat Sec. 13DD(b) as a responsibility criterion; nor did he believe that that section was violated by a subcontract award to a corporation having no prior experience. Because of the Administrator's experience in interpreting bid solicitations, this interpretation is entitled to deference. Therefore, we conclude that the Administrator did not act irrationally in refusing to question the affirmative determination of Jet Tech's responsibility.
 
 
 18
 Clevepak also contends that the Administrator irrationally read two EPA regulations so that one (40 C.F.C. Sec. 35.936-13(c)) negates the other (40 C.F.R. Sec. 30.340-2(c)), when an alternate reading would have avoided this claimed irrational result. Section 35.936-13(c) prohibits the general use of bid solicitation experience clauses requiring suppliers "to have a record of satisfactory operation for a specified period of time." Section 30.340-2(c) requires subcontractors to have a "satisfactory record of ... performance." From the Administrator's decision, we discern, however, that he read Sec. 35.936-13(c) principally as a source of policy against limiting market entry. Thus, the Administrator declined to accept Clevepak's contention that a new corporation's lack of record of performance was tantamount to an unsatisfactory record. We do not believe, as Clevepak contends, that new entries into the aerator subcontracting field are barred from making quotations on such contracts by EPA regulations and the specifications in question.
 
 
 19
 In sum, Clevepak has failed to present any evidence of bad faith, fraud, or violation of a definite responsibility standard in the bid solicitation. It has not shown that the Administrator's dismissal of its protest was arbitrary and capricious, or an abuse of discretion, or not in accordance with law.
 
 
 20
 The judgment of the district court is accordingly
 
 
 21
 AFFIRMED.
 
 
 
 [1]
 The agency granted the money under Title II of the Clean Water Act, P.L. 92-500, as amended by P.L. 95-217, 33 U.S.C. Sec. 1281 et seq. Under section 202(a) of the Act, the Authority received 75% of the estimated total project cost
 
 
 [2]
 It is uncontroverted that after Clevepak acquired Pentech, several members of Pentech's management left and formed Jet-Tech, Inc., on June 12, 1981. Although uncontroverted, these facts were not before the Administrator, and we do not consider them in arriving at our decision
 
 
 [3]
 Clevepak dropped its claim, made to the authority, that 40 C.F.R. Sec. 35.938-4(h) required competitive bidding among potential subcontractors to each potential prime contractor. Before the Administrator, Clevepak asserted that Dickerson's purchase order to Jet Tech for an aerator violated the competitive procurement requirements of 40 C.F.R. Sec. 35.936-13, and the responsibility standards for suppliers, which are made applicable by Sec. 35.936-15(a)
 Section 35.936-13(a)(2) does not, as Clevepak seemed to suggest in its protest and request for agency review, require a competitive bidding procedure for awards to suppliers. That regulation requires simply that project specifications list, to the extent practicable, products readily available through competitive procurement. In calling for an aerator made by "Pentech, Aerocleve or equal," the original bid specifications clearly satisfied the regulation. The Administrator's belief that the clearly inapplicable language of Sec. 35.936-13(a)(2) did not invalidate the award to Jet Tech is reasonably and readily discernible from his determination that Clevepak had not presented a proper matter for protest. Bowman Transportation, Inc. v. Arkansas-Best Freight System, Inc., 419 U.S. 281, 285-286, 95 S.Ct. 438, 441-442, 42 L.Ed.2d 447 (1974).
 
 
 [4]
 This section provides that the limitations on subagreement awards set out in Sec. 35.936-15 shall apply to subcontracts. A subpart of the incorporated section Sec. 35.936-15(a), makes the responsibility standards of Sec. 30-340-2(a)-(d), (g) apply to subcontractors
 
 
 [5]
 See In re Houghton Elevator Division, Reliance Electric Co., B-184865, 76-1 C.P.C. 294 (1976); In re Atlantic Maintenance Co., 54 Comp.Gen. 686 (1975); 75-1 C.P.D. 108; In re United Hatters, Cap and Millinery Workers Internat'l Union, 53 Comp.Gen. 931, 74-1 C.P.D. 310 (1974)