**Donald and Marilyn BURKHOLDER, Plaintiff–Appellants,**

v.

**Mary E. PETERS, Administrator, Federal Highway Administration, et al., Defendant–Appellees.**

No. 02–3394.

United States Court of Appeals, Sixth Circuit.

Jan. 9, 2003.

---

Before KENNEDY and GILMAN, Circuit Judges; and SARGUS, District Judge.*

KENNEDY, Circuit Judge.

## I.

The Ohio Department of Transportation ("ODOT") plans to relocate a 16–mile section of U.S. Route 30 that runs between Bucyrus and Ontario, Ohio. Currently, this stretch of highway has only two lanes, and has access points from adjacent property and intersecting roads. The portions of U.S. Route 30 on either side of it have four lanes and are limited-access highways. ODOT desires to make the entire route uniform, in this case by constructing a new segment of four-lane, limited-access highway to replace the existing roadway. Part of this new highway segment will run directly through the family farm of plaintiffs, Donald and Marilyn Burkholder, which is located outside of Galion, Ohio.

This project is funded by the Federal Highway Administration ("FHWA"), subjecting it to the procedural requirements of the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321, *et seq.* NEPA broadly requires all federal agencies to take into account the environmental effects of their actions, primarily by requiring an Environmental Impact Statement ("EIS") for any "major Federal action significantly affecting the quality of the human environment." 42 U.S.C. § 4332(2)(C). In order to decide whether a proposed federal action is likely to significantly impact the environment, thus triggering the need for an EIS, agencies must prepare a "concise public document" known as an Environmental Assessment ("EA"). 40 C.F.R. § 1508.9(a). Based on the EA, the federal agency either orders preparation of an EIS, or issues a "finding of no significant impact" ("FONSI"), which constitutes the agency's determination that no EIS is required. 40 C.F.R. § 1508.13.

Agencies must follow certain federal regulations when preparing the EA. Until an agency has issued a record of decision concerning the environmental impact of the proposed project, regulations promul-

---

* The Honorable Judge Edmund A. Sargus, Jr., United States District Judge for the Southern District of Ohio, sitting by designation.

gated by the Council on Environmental Quality ("CEQ") prohibit taking any action that would "limit the choice of reasonable alternatives." 40 C.F.R. § 1506.1(a)(2). To that end, FHWA regulations specifically prohibit "final design activities" prior to the issuance of a FONSI. 23 C.F.R. § 771.113(a)(1)(ii). Although federal regulations permit agencies to delegate responsibility for preparing an EA to a private contractor, such contractors must provide disclosure statements indicating that they have no "financial or other interest in the outcome of the project." 40 C.F.R. § 1506.5(c). The CEQ has interpreted "financial or other interest" to include "a promise of future construction or design work on the project." *40 Most Asked Questions Concerning CEQ's National Environmental Policy Act Regulations,* 46 F.R. 18031, March 23, 1981.

On June 7, 1993, ODOT hired a private consulting firm, McCoy/Fok & Associates, Inc., to conduct a preliminary study of the project, including the EA. On July 29, 1997, ODOT entered into a second contractual agreement with McCoy/Fok to undertake the engineering, design and construction work for the final highway project. On February 11, 2000, appellants wrote a letter to FHWA complaining that the second contract violated federal timing regulations and created a conflict of interest. FHWA responded that it would continue to work with ODOT nonetheless, because the design work was financed solely by the state, no federal funds were committed to the project prior to the completion of the EA, and thus its ultimate review would be impartial. After seven years of preparation, ODOT issued an EA, prepared by McCoy/Fok, on November 27, 2000.

On April 12, 2001, after reviewing the EA, the underlying environmental evidence, and the transcripts of various public hearings, the FHWA issued a FONSI. This final agency action is subject to review in federal court pursuant to the Administrative Procedures Act ("APA"), 5 U.S.C. § 701, *et seq.* The Burkholders challenged the FONSI in federal court, seeking declaratory and injunctive relief prohibiting defendants from pursuing the project until a proper EIS was completed. The district court below granted summary judgment for the defendants. The Burkholders appeal, arguing that ODOT's violation of timing requirements and conflict of interest rules are legal errors that tainted the environmental assessment process and resulted in an arbitrary and capricious FONSI.

## II.

### A. Procedural Violations of NEPA Implementing Regulations

■ ODOT violated binding administrative regulations governing the process of making the environmental assessment under NEPA. The second contract with McCoy/Fok, which was a contract for final design work, was entered into on July 29, 1997, over three years before completion of the EA and the FONSI. This clearly violated CEQ and FHWA regulations prohibiting and "final design activity" and any action that would "limit the choice of reasonable alternatives." 23 C.F.R. § 771.113(a)(1)(ii); 40 C.F.R. § 1506.1(a)(2).[1] McCoy/Fok also failed to file a disclosure statement indicating a conflict of interest, despite the fact that the

---

1. ODOT claims that there is no violation because McCoy/Fok did not have a promise of future work when it undertook most of the work that went into the EA. Even if ODOT had any evidence to support its assertion, which it does not, the second contract violated the plain language of the NEPA and FHWA regulations because McCoy/Fok engaged in final design work prior to the completion of the EA.

second contract's promise of final design work provided them with a "financial interest" in the project as defined by federal regulations. This clearly violated CEQ regulations. 40 C.F.R. § 1506.5(c).

## B. The Oversight Test

■ The district court found that although defendants failed to comply with these federal regulations, their noncompliance was essentially harmless. Relying on a Tenth Circuit case, *Associations Working for Aurora's Residential Environment v. Colorado Dept. of Transp.*, 153 F.3d 1122, 1129 (10th Cir.1998) (*"AWARE"*), the district court found that there was sufficient evidence of independent oversight by FHWA to cure the procedural misconduct committed by ODOT and McCoy/Fok.

In *AWARE*, the Colorado Department of Transportation ("CDOT") contracted with a private company to provide final design work for a proposed highway project. CDOT later engaged the same contractor to complete the EIS for that project. The Tenth Circuit found that although the promise of future design work may have given rise to a conflict of interest and breached binding federal regulations, "the ultimate question for the court is ... whether the alleged breach compromised the 'objectivity and integrity of the NEPA process.'" *AWARE*, 153 F.3d at 1129 (quoting *Citizens Against Burlington v. Busey*, 938 F.2d 190, 202 (D.C.Cir.1991)). In order to determine whether the breach did compromise the process, "the Court can evaluate the oversight that the agency provided to the [process] as a factual matter and make a determination upholding the [EA]." *Id.* Having found that CDOT used the contractor only for technical expertise, independently managed all major decisions, reviewed all aspects of the contractor's work, and performed

supplemental analysis where needed, the Tenth Circuit was convinced that the integrity and objectivity of the process was not compromised.

The "oversight test" articulated by the Tenth Circuit in the *AWARE* case correctly balances deference to agency expertise and efficiency with the need for federal courts to protect third parties from agency misconduct. Although federal courts will step in where necessary, agencies should be given the first opportunity to correct errors committed during the NEPA process. The requirement that agencies supply independent oversight is consistent with the sort of affirmative obligations to police misconduct committed by state agencies and contractors found throughout the NEPA regulatory scheme. *See, e.g.*, 40 C.F.R. § 1506.1(b) (if a federal agency is aware that an applicant such as ODOT is about to take action that would limit the choice of reasonable alternatives, the agency "shall promptly notify the applicant that the agency will take appropriate action to ensure that the objectives and procedures of NEPA are achieved."); 40 C.F.R. § 1506.5(b) (FHWA "shall make its own evaluation of the environmental issues and take responsibility for the scope and content of the environmental assessment.").

This test is also consistent with our prior jurisprudence in NEPA cases, which has recognized "a harmless-error rule ... such that a mistake that has no bearing on the ultimate decision or causes no prejudice shall not be the basis for reversing an agency's determination." *Sierra Club v. Slater*, 120 F.3d 623, 637 (6th Cir.1997). By ensuring that harmless violations do not disturb otherwise valid agency decisions, the oversight test is also consistent with the CEQ's admonition that "trivial violations of these regulations not give rise to any independent cause of action." *40 Most Asked Questions Concerning CEQ's*

*National Environmental Policy Act Regulations,* 46 F.R. 18031, March 23, 1981.

Recent legislation affirms the validity of the Tenth Circuit's approach. The Transportation Equity Act for the 21st Century ("TEA–21"), 23 U.S.C. § 112(g), allows states to hire the same contractor to perform the EA and final design work "if the State conducts a review that assesses the objectivity of the environmental assessment ... prior to its submission to the Secretary." Although this provision was not in effect at the time ODOT entered into its contracts with McCoy/Fok, the fact that Congress chose essentially to codify the oversight test into law validates our application of the test in this case.

## C. Standard of Review

This court reviews a district court's decision to grant summary judgment *de novo,* applying the appropriate standard of review for administrative agency decisions. *Sierra Club v. Slater,* 120 F.3d 623, 632 (6th Cir.1997). We review an agency decision under NEPA to ensure that the decision is not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." *Id.* Agency action is accorded a "presumption of regularity." *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 415, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971). Under no circumstances may the reviewing court substitute its judgment for that of the agency. *Id.* at 415–16. However, "agency action taken without observance of the procedure required by law will be set aside." *Metcalf v. Daley,* 214 F.3d 1135, 1141 (9th Cir. 2000).

■ Appellants argue that we should review the agency's decision under a less deferential "reasonableness" standard of review because of the prima facie regulatory violations. The cases cited by appellants, *Alaska Wilderness Recreation and Tourism Ass'n v. Morrison,* 67 F.3d 723, 727 (9th Cir.1995), and *Kettle Range Conservation Group v. United States Forest Serv.,* 148 F.Supp.2d 1107, 1116 (E.D.Wash.2001), hold that challenges to agency action that raise predominantly legal questions are reviewed for reasonableness, rather than under the highly deferential standard of review normally accorded to agency decisions that implicate areas of agency expertise. This case does not raise predominantly legal questions, such as the interpretation of a statute. In this case we are reviewing the FHWA's final administrative decision to issue a FONSI. Therefore, we review this case under the normal "arbitrary and capricious" standard of review.

However, in this case, we must also decide whether FHWA and/or ODOT exercised sufficient independent oversight to cure the procedural errors committed in the course of the EA process. Although this question is a factual one, it is not the kind of scientific or technical question which demands deference to agency expertise. Indeed, there is no formal factual finding by an agency on this question to which we could defer. Rather, it is the federal courts' job to determine whether, as a factual matter, the oversight provided by the agency is sufficient to cure the impact of a procedural violation by a private contractor in the NEPA process. Thus, keeping in mind that, under the arbitrary and capricious standard of review, agency action is accorded a "presumption of regularity," we must decide whether the facts viewed in the light most favorable to the plaintiff could support the plaintiffs' burden of proving that there was not sufficient independent oversight to cure the procedural violations committed by the defendants.

## D. Federal Oversight of the NEPA Process

■ FHWA's substantial independent oversight of the EA process removes the

possibility of any taint resulting from the regulatory violations. It is important to emphasize that the FHWA is entitled to the "presumption of regularity" articulated by the Supreme Court in *Overton Park.* FHWA states in the FONSI that its decision is based on an "independent analysis" of the environmental evidence, including evidence from the EA, other studies, and the multitude of public hearings related to this project. (J.A. 423, 235). FHWA knew that ODOT and McCoy/Fok had violated federal procedures Therefore, FHWA's independent review took into account the potential conflict of interest resulting from the procedural irregularities. FHWA insisted that ODOT keep it apprized of its progress throughout the NEPA process. Documents in the administrative record indicate that ODOT and McCoy/Fok submitted their data and documents to FHWA for review, and FHWA responded with comments and questions, to which ODOT was required to respond. (J.A. 252, 409). FHWA also participated in a study called the Major Investment Study ("MIS"), as required by the National Federal Aid Highway Act, 23 U.S.C. § 100 *et seq.,* which separately concluded that construction of a new four-lane limited access highway was the preferred alternative. (J.A. 360, 378). Finally, ODOT hired another independent contractor, HzW Environmental Consultants, Inc., to analyze and respond to many of the Burkholders' concerns, thus providing another layer of independent analysis. (J.A. 225).

No federal funds were committed to any final design work prior to the completion of the EA. In fact, FHWA explicitly declined to provide federal funds for such activities, and even made clear that it would not reimburse such expenses. (J.A. 359). FHWA was aware of the potential conflict of interest resulting from ODOT's and McCoy/Fok's violation of federal procedures, and took measures to insulate itself from the effects of those violations. Therefore, in light of the presumption of regularity, the absence of a commitment of federal funds, and the substantial evidence in the record indicating that FHWA independently reviewed and oversaw the NEPA process, there is no reason to disturb the FONSI.[2]

Appellants' only evidence pointing to the failure of FHWA's independent oversight is the agency's alleged bias against appellants' evidence of environmental harm and their proposed alternative. Although the arbitrary and capricious standard of review normally does not permit us to second-guess substantive policy decisions made by an agency, *see, e.g., Vermont Yankee Nuclear Power Corp. v. NRDC,* 435 U.S. 519, 555, 98 S.Ct. 1197, 55 L.Ed.2d 460 (1978), appellants argue that we must in fact examine the evidence in order to assess the extent to which the procedural violations really did impact the integrity of the process. In essence, they charge that the agency did not review their proposed alternative objectively and in good faith. *See Metcalf v. Daley,* 214 F.3d 1135, 1142 (9th Cir.2000) (noting that review "must be taken objectively and in good faith, not as an exercise in form over substance, and not as a subterfuge designed to rationalize a decision already made"). Appellants have a high hurdle to

---

2. We wish to emphasize, however, that ODOT's assertion that its own independent analysis cured its procedural mishaps does nothing to convince this Court of the integrity of the overall process. ODOT plainly violated applicable federal regulations when it awarded the second contract to McCoy/Fok prior to the completion of the EA and the issuance of the FONSI. ODOT's alleged efforts to monitor McCoy/Fok's work do not provide sufficient insurance against the taint of a possible conflict of interest. It is only FHWA's oversight that, in the context of this case, permits the Court to affirm the final agency decision.

clear to show that the agencies' review of their evidence was so arbitrary and capricious as to overcome the "presumption of regularity" accorded the final agency decision by virtue of FHWA's independent oversight.

Appellants argue that the tainted nature of the agencies' actions is revealed by their failure to take into account two important aspects of the problem: (1) the safer alternative of upgrading the existing corridor of highway, rather than relocate it; (2) the potential for serious groundwater contamination resulting from the relocation.

### 1. Upgrading Alternatives

■ NEPA requires the agency to "[r]igorously explore and objectively evaluate all reasonable alternatives, and for alternatives which were eliminated from detailed study, briefly discuss the reasons for their having been eliminated." 40 C.F.R. § 1502.14(a). In the EA document itself, ODOT considered two options for upgrading the existing corridor: (1) expand to a four-lane, limited access highway; (2) expand to a four-lane highway while maintaining the existing intersections and access points from adjacent properties. (J.A. at 451). Neither option was deemed acceptable. During the administrative hearings leading up to the EA, appellants presented expert evidence indicating that the alternative plan of upgrading the existing corridor would have fewer environmental impacts than the state's proposal to build a new stretch of highway. ODOT explicitly responded to appellants' expert report on this point, and found that the alternative of upgrading the existing corridor was "not feasible or prudent." (J.A. 586–91). ODOT explained that upgrading the existing highway to a four-lane, limited access highway would increase "community impacts" and "displace virtually all existing development encountered along the existing route. Extensive residential and commercial displacements would result and right-of-way costs would be extremely high." (J.A. 590). Moreover, according to ODOT, maintaining the intersections and access points would not eliminate the safety problems that were one of the primary motivations for this project. (J.A. 453, 583).

It is not our role to examine the substantive basis on which the agency rested its decision to reject the appellants' proposed alternative. *Vermont Yankee,* 435 U.S. at 555. We may not disturb the agency's decision to rely on its experts rather than the conflicting views of the appellants' expert. *Marsh v. Oregon Natural Resources Council,* 490 U.S. 360, 378, 109 S.Ct. 1851, 104 L.Ed.2d 377 (1989) (holding that "an agency must have discretion to rely on the reasonable opinions of its own qualified experts even if, as an original matter, a court might find contrary views more persuasive."). It is enough that the record clearly indicates that the agency took the proposed alternative into account, and gave plausible reasons for rejecting it.

### 2. Groundwater Issues

■ Federal regulations require agencies to consider the effects of its proposed project on "ecologically critical areas" such as groundwater supplies. 40 C.F.R. § 1508.27(b)(3). The EA must include a "brief discussion" of the impact on such resources. 40 C.F.R. § 1508.9(b). Appellants argue that the EA did not sufficiently take into account the issue of groundwater contamination. However, the EA explicitly discusses the project's impact on groundwater resources. (J.A. 465). Appellants presented evidence that the EA's analysis of groundwater issues was flawed, and in response, ODOT hired an independent consultant, HzW Environmental Con-

sultants, Inc., to re-evaluate the issue. (J.A. 225). HzW reviewed appellants' evidence and concluded that although there were in fact groundwater contamination risks, the proposed plan was still the preferred option. (J.A. 234). Although appellants have raised a genuine issue of fact on the question of the extent of the risk of groundwater contamination and the preferred alternatives in light of that risk, this is yet another example of the agency's reasonable reliance on the opinion of its expert. *Marsh,* 490 U.S. at 378. "It is not for us to substitute our judgment of the environmental impact for the judgment of the agency, once the agency has adequately studied the issue. It is our role, however, to determine whether the agency has, in fact, adequately studied the issue and take a 'hard look' at the environmental consequences of its decision." *Crounse Corp. v. Interstate Commerce Comm'n.,* 781 F.2d 1176, 1193 (6th Cir.1986). It is sufficient that the EA discussed the conflicting opinions, the agencies gathered additional data, hired a consultant to examine the objections raised by the appellants, and explained the basis for their conclusions. This constitutes the "hard look" demanded of agencies by NEPA and the APA, and does not provide a sufficient basis for questioning the soundness of the final agency decision.

### III.

In short, there is no basis in the record to support appellants' assertion that their evidence of safer alternatives and serious environmental impacts was dismissed due to the bias of ODOT and its private contractor. To the extent that any such bias exists, appellants cannot carry their burden of proof to show that the independent federal oversight provided by FHWA did not cure it. We therefore AFFIRM the district court's order granting summary judgment for the defendants.