United States Court of Appeals
Fifth Circuit

**F I L E D**

**January 20, 2006**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 05-60366

Summary Calendar

_____

SOUTH TEXAS MORTGAGE CORPORATION, doing business as
Independent Mortgage

Petitioner

v.

UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT

Respondent

_____

Petition for Review:
United States Department of Housing and Urban Development
No. 04-003-MR

_____

Before KING, BARKSDALE and BENAVIDES, Circuit Judges.

PER CURIAM:[*]

Petitioner South Texas Mortgage Corporation seeks review of

an administrative action.  For the reasons provided below, this

petition for review is DENIED.


**I.  Background**

_____

[*]  Pursuant to 5TH CIR. R. 47.5, the court has determined
that this opinion should not be published and is not precedent
except under the limited circumstances set forth in 5TH CIR. R.
47.5.4.

Pursuant to Title II of the National Housing Act, 12 U.S.C. §§ 1707 et seq., the Federal Housing Administration ("FHA"), an entity within the Department of Housing and Urban Development ("HUD"), administers a program to insure private lenders ("mortgagees") against loss on single-family home mortgage loans. To qualify for FHA insurance, all mortgagees must be approved by HUD--even those mortgagees whose principal activity is the origination of mortgages for transfer to a third-party underwriter sponsor, such as the petitioner-appellant in this case. See 12 U.S.C. § 1707(b); 24 C.F.R. Part 202, § 202.8; MORTGAGEE APPROVAL HANDBOOK 4060.1 REV-1, U.S. DEP'T OF HOUS. & URBAN DEV. §§ 2-14, 2-24, 6-3 [hereinafter HUD HANDBOOK].

In 1984, Rick Adams ("Adams") and Peter Velasco ("Velasco") began working together in the San Antonio mortgage industry. In 1992, the two incorporated InterAmericorp, Inc., d/b/a Independent Mortgage ("IA"). Each initially owned fifty percent of IA's stock. IA obtained approval from HUD to issue FHA-backed loans soon after its incorporation, but in September of 1998, IA's FHA approval was withdrawn due to its failure to submit required annual audited financial statements and to pay the required annual recertification fee. IA did not recover FHA approval at any point relevant to this case. In 1994, Adams moved to Corpus Christi and opened a satellite office of IA under the name Independent Mortgage Services ("IMS").

2

Two years later in Corpus Christi, Adams, acting alone, incorporated the South Texas Mortgage Corporation, d/b/a Independent Mortgage ("STMC"). Adams, the sole officer and shareholder of STMC, transferred his shares of IA to STMC. In early 1997, petitioner STMC gained HUD approval to originate FHA-insured mortgages.

Sometime in 1998 STMC and IA entered into a "loan origination agreement" in which IA employees originated FHA-insured loans for STMC. Under the agreement, IA employees took applications from borrowers, performed various other loan origination functions, and submitted the loans to STMC's sponsors for underwriting, all using STMC's HUD-approved identification number. In exchange, IA retained all fees generated by these loan originations.

This loan origination agreement enabled IA to remain profitable and build up net worth so that IA could reapply for FHA approval. At the time, Adams and Velasco were good friends with a close personal and business relationship. More importantly, perhaps, Velasco owed Adams a sizable amount of money--although Adams attempted to disavow the existence of this debt at the administrative hearing[2]--and the profits generated

---

[2] Velasco's debt to Adams was caused by his default on a complicated conditional purchase agreement for IA stock. At the administrative hearing Adams stated that once he reclaimed his IA stock in June 1996, Velasco's obligation to make further payments to him under the stock purchase agreement was nullified. However, Adams continued to accept payments from Velasco on the

3

for IA by this agreement may have been intended to settle this debt. All of the loans at issue in this case originated under this agreement.

Beginning in July 2001, HUD's Quality Assurance Division conducted an investigation of STMC's FHA-insured loan origination activity. In addition to the loan origination agreement outlined above, this investigation also uncovered STMC's failure to develop a Quality Control Plan. On July 25, 2002, HUD's Mortgagee Review Board informed STMC that it was considering imposing civil money penalties based on the results of this investigation. HUD issued its complaint to STMC detailing these alleged violations on August 26, 2003.

After discovery, an administrative hearing was conducted on March 4-5, 2004, in San Antonio. The administrative law judge ("ALJ") issued his Decision and Order on September 3, 2004, ruling in favor of HUD on all counts and imposing over $104,000 in penalties on STMC.[3] On October 1, 2004, STMC petitioned the Secretary of HUD for review of the ALJ's decision. On April 12,

_____

stock purchase agreement after June 1996.

[3] Specifically, the ALJ held that by permitting 330 FHA-insured loans to be originated by persons employed elsewhere, STMC knowingly and materially violated: 12 U.S.C. § 1735f-14(b)(1)(G), (H); 24 C.F.R. § 30.35(a)(1); HUD HANDBOOK 4060.1 Rev-1; and Mortgagee Letters 95-36 and 00-15. In addition, the ALJ held that by failing to maintain and implement a Quality Control Plan, STMC knowingly and materially violated: 12 U.S.C. § 1735f-14(b)(1)(C); 24 C.F.R. § 202.5(h); and HUD HANDBOOK 4060.1 Rev-1.

4

2005, the Secretary's Designee, Camille T. Pierce ("Designee Pierce"), issued an Order on Secretarial Review, amending the order by decreasing the penalty to just over $33,000. STMC petitions this Court for review of these orders.

## II. Discussion

This court has jurisdiction under 12 U.S.C. § 1735f-14(d)(1), which gives mortgagees such as STMC the right, "[a]fter exhausting all administrative remedies," to file "a written petition" with this court "praying that the Secretary's determination or order be modified or set aside in whole or in part." The scope of our review of such a petition is defined by the general provisions of 5 U.S.C. § 706. See 12 U.S.C. § 1735f-14(d)(3) (stating that "[t]he decisions, findings, and determinations of the Secretary shall be reviewed pursuant to section 706 of Title 5").

STMC believes that this court should review the previous administrative decisions de novo. For a variety of reasons, de novo review is inappropriate: the ALJ's decision was interpretative; it does not significantly revise HUD's previous interpretations of any relevant regulation; nor does it amount to a new, substantive rule; nor does it amount to a rulemaking decision. See, e.g., ShellOffshore Inc. v. Babbit, 238 F.3d 622, 626-29 (5th Cir. 2001) (discussing the appropriate context for de novo appellate review of agency adjudicative decisions).

5

Therefore, this court must examine the previous administrative decisions and uphold them if they were supported by "substantial evidence," unless it finds that they were "arbitrary, capricious, [or] an abuse of discretion," as set forth under 5 U.S.C. § 706(2). See, e.g., Citizens To Preserve Overton Park v. Volpe, 401 U.S. 402, 413-416 (1971) (discussing the appropriate situations for de novo, substantial evidence, and arbitrary and capricious review).

HUD's argument, upheld by both the ALJ and Designee Pierce, is that the loan origination agreement between IA and STMC violated 24 C.F.R. Part 202, HUD HANDBOOK 4060.1 Rev-1, and HUD's general Mortgagee Letters 95-36 and 00-15 ("ML 95-36" and "ML 00-15"). The ALJ also found that STMC violated 24 C.F.R. § 202.5(h) and Chapter 6 of HUD Handbook 4060.1 Rev-1 by failing to implement a proper quality control plan. Designee Pierce decreased the penalty based on STMC's inability to pay the amount assessed by the ALJ, but this adjustment did not represent a modification of the ALJ's essential findings.

STMC argues that the ALJ's decision was based on an incorrect interpretation of ML 95-36. STMC believes that the ALJ incorrectly relied upon ML 95-36 to find that taking a loan application was a "critical core function" of a full-time "loan officer" and to further find that IA was a "third party loan originator." According to STMC, in using and defining these terms, the ALJ departed from settled law and created conflict

6

with pre-existing HUD regulations. Specifically, STMC argues that ML 95-36 is imprecise, full of ambiguities, and rife with undefined terms. STMC implies that this ambiguity and imprecision was deliberate--that ML 95-36 was deliberately drafted in an ambiguous and imprecise fashion in order to fulfill its purpose and permit mortgagees flexibility. Therefore, STMC argues that the ALJ ignored the plain--albeit imprecisely plain-- meaning and deliberately ambiguous intent of ML 95-36 when he determined that the IA/STMC loan origination arrangement was prohibited.

STMC's argument ignores all other governing regulations and statutes, focusing solely upon a single HUD general regulatory letter. Even on its own terms, the argument is implausible. Contrary to STMC's conclusions, the taking of a loan application <u>does</u> seem to be a critical core function of a loan officer, and STMC presents no persuasive legal or practical justification to conclude otherwise. In fact, this is quite arguably <u>the</u> <u>paramount</u> function of a loan officer; as the ALJ noted, the initial intake of the loan application may substantially affect the nature and quality of the information that will ultimately be relied upon by the underwriter. STMC's argument that ML 95-36 represents a deliberate agency choice for ambiguity and unrestrained mortgagee flexibility is similarly implausible; the ALJ's interpretation and the plain language of the regulatory

7

letter are much more persuasive and dictate the contrary conclusion.

The greatest weakness of STMC's position, however, is the evidence in the record which demonstrates that Adams and Velasco knew the loan origination agreement was illegal well before it was uncovered by HUD. In fact, Adams and Velasco appear to have known that this arrangement was illegal from the outset. Worst of all, Adams appears to have lied about his knowledge and actions during the administrative hearing.

In conclusion, STMC has presented no reason to overturn the conclusions of the ALJ as affirmed by Designee Pierce. The record is indisputable: STMC circumvented FHA requirements specifying that properly trained, supervised, and accountable personnel originate loans. This misconduct circumvented FHA requirements intended to ensure that personnel engaged in the critical core function of taking loan applications are competent, properly trained, and supervised by the approved mortgagee. In so doing, STMC exposed the FHA insurance fund to a high risk of loss, placing the risk of loss of bad loans squarely on the taxpayer. The existence of these serious violations is supported by substantial evidence, and the modified penalty imposed by Designee Pierce is appropriate.

### III.  Conclusion

For the reasons stated above, the petition for review is DENIED.